## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. NATIONAL ASSOCIATION OF<br>FORENSIC COUNSELORS, INC., a Nevada<br>Non-Profit Corporation, and<br>2. AMERICAN ACADEMY OF CERTIFIED<br>FORENSIC COUNSELORS, INC., d/b/a<br>AMERICAN COLLEGE OF CERTIFIED<br>FORENSIC COUNSELORS, a Nevada For-<br>Profit Corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | Case No. 14-cv-00187-RAW |
| v. | )<br>) | |
| 1. NARCONON INTERNATIONAL, a<br>California Non-Profit Corporation, et al. | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

### PLAINTIFFS' RESPONSE AND INCORPORATED BRIEF IN OPPOSITION TO DEFENDANT NARCONON INTERNATIONAL'S MOTION TO DISMISS

Respectfully submitted,

**KEESLING LAW GROUP, PLLC**

 *s/ David R. Keesling*
David R. Keesling, OBA # 17881
Heidi L. Shadid, OBA # 22897
Sloane Ryan Lile, OBA # 21342
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, OK 74103
(918) 924-5101 Phone
(918) 512-4888 Fax
David@KLGattorneys.com
Heidi@KLGattorneys.com
Sloane@KLGattorneys.com

*Attorneys for Plaintiffs National Association of*
*Forensic Counselors, Inc. and American Academy of*
*Certified Forensic Counselors, Inc. d/b/a ACCFC of*
*Certified Forensic Counselors*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1)  Direct Activities in Oklahoma . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2)  Narconon International's Actual Operational Control . . . . . . . . . . . . 11
          3)  Narconon International's Administrative Control . . . . . . . . . . . . . . . 12
          4)  Narconon International's Actions Constitute a Tacit Admission . . . 14
          5)  Narconon International's High School Education Program . . . . . . . 15

*ARGUMENTS AND AUTHORITIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     I.       STANDARD FOR MOTION TO DISMISS UNDER 12(b)(2) FOR LACK
             OF PERSONAL JURISDICTION     . . . . . . . . . . . . . . . . . . . . . 16

     II.     PERSONAL JURISDICTION EXISTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          a.      General Jurisdiction Exists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          b.      Specific Jurisdiction Exists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          c.      The Exercise of Jurisdiction is Reasonable under the Circumstances . . . 21
              1)  Burden on the Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
              2)  Forum state's interest in resolving the dispute . . . . . . . . . . . . . . . . 22
              3)  Plaintiffs' interest in receiving convenient and effective relief . . . . . 23
              4)  Interstate judicial system's interest in obtaining the most
                   efficient resolution of controversies . . . . . . . . . . . . . . . . . . . . . . . 23
              5)  Shared interest of the several states in further fundamental
                   substantive social policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     III.    PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES CLAIMS
             AGAINST THE MOVING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . 24

     IV.    ALTERNATIVE REQUEST FOR LEAVE TO AMEND . . . . . . . . . . . . . . . . 25

     V.     PLAINTIFFS OBJECT TO THE REQUEST FOR JUDICIAL NOTICE . . . . . 25

*CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TABLE OF AUTHORITIES

*Cases*

*1-800 Contacts, Inc. v. Lens.com, Inc.,*
    722 F.3d 1229 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*American Land Program, Inc. v. Bonaventura Uitgevers Maatschappu,*
    710 F.2d 1449 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Calder v. Jones,*
    465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) . . . . . . . . . . . . . . . . . . . . . . 19

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
    514 F.3d 1063 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Foman v. Davis,*
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Geanacopulos v. Narconon Fresh Start d/b/a Rainbow Canyon Retreat, et al.,*
    2014 WL 4079509 (D. Nevada) (Non-Published) . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,*
    205 F.3d 1244 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
    456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) . . . . . . . . . . . . . . . . . . . . . . 19

*Melea, Ltd. v. Jawer SA,*
    511 F.3d 1060 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    243 F.Supp.2d 1073 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Motown Record Co., L.P. v. iMesh.Com, Inc.,*
    2004 WL 503720 (S.D.N.Y.) (Unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Newsome v. Gallacher,*
    722 F.3d 1257 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,*
    149 F.3d 1086 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 22, 23

*Shrader v. Bittinger,*
    633 F.3d 1235 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16, 17, 18

*Tal v. Hogan,*
       453 F.3d 1244 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Ticketmaster-New York, Inc. v. Alioto,*
       26 F.3d 201 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research,*
       527 F.3d 1045 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wyatt v. Kaplan,*
       686 F.2d 276 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


**Statutes**
42 U.S.C. § 290dd-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 290dd-2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 290dd-2(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

 42 U.S.C. § 1114 (Lanham Act § 32) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

42 U.S.C. § 1125 (Lanham Act § 43) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Federal Regulations**
42 C.F.R. § 2.12 (b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 C.F.R. § 2.12 (c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 C.F.R. § 2.12 (d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Federal Rules**
FED.R.CIV.P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 15, 25

FED.R.CIV.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

FED.R.CIV.P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

COME NOW, Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") and Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC") (collectively "Plaintiffs"), by and through their counsel of record Keesling Law Group, PLLC, and pursuant to FED.R.CIV.P. Rule 12(b)(2) hereby submit Plaintiffs' Response and Incorporated Brief in Opposition to Defendant Narconon International's Motion to Dismiss.  In support thereof, Plaintiffs state as follows:

### *INTRODUCTION*

This case involves Defendants' theft of Plaintiffs' logos, trademarks, certifications, and established business reputation in order to bait vulnerable victims into the Scientology religion. Plaintiffs operate a certification board for forensic counselors.  In order to operate the certification board, Plaintiffs have established a series of standards, skills, training and competencies required for professionals working with criminal offenders in addictions[1] to enhance the delivery of safe and effective treatment.  This lawsuit involves the misappropriation and misuse of Plaintiffs' logos, trademarks, certifications, and established business reputation by Defendants for the purposes of marketing Narconon programs for profits and ultimately promoting the Church of Scientology, at the expense of Plaintiffs.  Defendant Narconon International was added to the Complaint based upon its role as substantial contributor coordinating the scheme to utilize Plaintiffs' logos, trademarks, certifications, and established business reputation to attract individuals into the Narconon Network and, consequently, the Church of Scientology.

---

[1] The addictions certifications are the only relevant certifications for the purposes of this case. However, Plaintiffs also promote competency and training in the areas of criminal justice, mental health and corrections.

*STATEMENT OF RELEVANT FACTS*

Based on the overarching breadth of the infringement and conspiracy, and to avoid unnecessary duplication, Plaintiffs incorporate by reference their Response to the Motion to Dismiss filed by Defendant Religious Technology Center ("RTC"), as well as all concurrently and previously filed Responses to Motions to Dismiss.  Specifically, Plaintiffs incorporate the paragraphs setting forth the common scheme run by RTC and the exhibits 1 – 26[2] referenced therein.  *For the clarity of the Record and for judicial economy, Plaintiffs are utilizing a continuous numbering scheme and will be separately filing an appendix with the exhibits to all concurrently filed Responses to the Motions to Dismiss rather than filing the exhibits piecemeal and duplicative with the individual Responses. Additionally, because Plaintiffs had also filed a Response to the Motion to Dismiss of Defendant David Lee with its own exhibits beginning at No. 1, Plaintiffs will list all exhibits from the David Lee Response as "DLEx."*

Of all the Defendants in this lawsuit, it is appalling that Narconon International filed a Motion to Dismiss based upon personal jurisdiction and failure to state a claim.  Narconon International is a key player in developing and executing the scheme described in the Complaint by virtue of not only their overarching participation, but also their control and leadership in the misappropriation and misuse of Plaintiffs' intellectual property with the obvious goals to further the profiteering of the Narconon Network and the Church of Scientology at Plaintiffs' expense. [Dkt. 3 at ¶¶ 115, 253].  Plaintiffs' Complaint sets forth, in great detail, Narconon International's direct role in the infringement and civil conspiracy.  Narconon International runs the Narconon Network, which consists of drug rehabilitation facilities, treatment centers, referral and

---

[2] Due to the interconnectivity of the Defendants and the allegations of this lawsuit, Plaintiffs are utilizing a continuing numbering scheme incorporating Exhibits 1-26 from the Response to the Motion to Dismiss filed by Defendant Religious Technology Center.  Plaintiffs will provide the Court with a courtesy copy of all continuously numbered exhibits for the Court's convenience.

intervention entities and individuals who utilize the technology of L. Ron Hubbard in drug treatment as a fundraising and recruitment program for Defendant Church of Scientology. [Dkt. 3 at ¶¶ 111-113]. In conjunction with Co-Defendants Association for a Better Living and Education ("ABLE"), Friends of Narconon International ("FONI"), David Miscavige ("Miscavige"), RTC, and Church of Scientology International, Narconon International operates a common scheme to promote the Narconon Network through the misappropriation and misuse of Plaintiffs' logos, trademarks and certifications. [Dkt. 3 at ¶ 115, 253]. Narconon International established and monitors the marketing program using Plaintiffs' marks, regardless of veracity, to augment and legitimize the Narconon Network. [Dkt. 3 at ¶ 119]. Narconon International's own President and Director, Defendant Clark Carr[3], even falsified his own credentials to bolster the Narconon Network – first by claiming certification before he was issued certification and thereafter by continuing to claim certification after its expiration. [Dkt. 3 at ¶ 116, 226-229].

Additionally, the facts listed herein contradict and rebut the self-serving statements provided in the Declaration of Defendant Clark Carr, attached to Narconon International's Motion. [Dkt. 295-1]. Specifically, paragraphs 4, 10, 13, 16, 20, 21, 22, 23, 24, 25, 27 and 28 are directly contradicted. For purposes of establishing jurisdiction, all factual disputes must be resolved in Plaintiffs' favor. *Shrader v. Bittinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The following disputed facts highlight Narconon International's overarching control and connection to the infringement and civil conspiracy substantially carried out in Oklahoma, evidencing the disputes in the facts as alleged by Carr:

---

[3] Plaintiffs additionally incorporate by reference, in its entirety, Plaintiffs' Response and Brief in Opposition to Defendant Clark Carr's Motion to Dismiss.

1)      **Direct Activities in Oklahoma**

Defendant Narconon International exerts direct control over the Narconon Treatment Centers and has demonstrably substantial ties to Oklahoma.  As admitted by Defendant Narconon Freedom Center's website, the Narconon Network constitutes over 120 rehabilitation and drug prevention centers and describes the important roles played by Defendants Narconon International and FONI. [See "About the Freedom Treatment Center" from www.freedomdrugrehab.com, Exhibit 38].  Oklahoma Defendant Kent McGregor is a member of the Freedom Center's Narconon Advisory Board. [See Narconon Advisory Board from www.freedomdrugrehab.com, Exhibit "39"]. The "About the Freedom Treatment Center" portion of the website further describes the Narconon International conferences that took place in only three main locations: Los Angeles, Stockholm and **Oklahoma**.  Narconon International's Oklahoma conference was similarly referenced by Defendant Narconon Spring Hill in the Affidavit of Tammy Strickling, attached to their Motion to Dismiss. [Dkt. 277-3 at ¶ 13].  Ms. Strickling is the "Director Chief Executive officer" of Narconon Spring Hill and she admitted to traveling to Oklahoma two years ago with two staff members to attend ***Narconon International's Conference in Oklahoma***. [Dkt. 277-3 at ¶ 13 (emphasis added)].  Additionally, Co-Defendant David Lee admitted that did interventions for Narconon International during which he was pushed in two areas: 1) to get more onto the Bridge of Scientology, and 2) to get NAFC certifications through Oklahoma Defendant Kent McGregor. [See DLEx. 9 at ¶ 1].

The interconnectivity amongst the Defendants is astonishing[4].  Narconon International cannot escape the web it has so carefully spun.  Despite Narconon International's Declaration to

---

[4] It is necessary to point out Defendants' apparent strategy in the filing of all Defendants' numerous Motions to Dismiss.  Certain motions are filed by only a single Defendant, while others are filed by groupings of Defendants. Yet, the groupings appear random with no real

the contrary, the three Trustees of Narconon Oklahoma also hold or have held controlling positions throughout the Narconon Network and various Scientology enterprises. [See Excerpts from Narconon 990s, Exhibit 40]. A detailed review of the 990s shows Narconon International's President and Director Clark Carr is one of the Trustees of Narconon of Oklahoma, as well as a Trustee of Narconon Fresh Start, and was a Director of Applied Scholastics International. Joni Ginsburg is not only a Trustee of Narconon of Oklahoma, but is also a Trustee of Criminon and of Applied Scholastics Western United States. Moreover, Laurie Zurn holds the following positions in addition to being a Trustee of Narconon Oklahoma:

- Trustee – Narconon International
- Trustee – Applied Scholastics Western United States (ASWUS)
- Trustee – Applied Scholastics International (ASI)
- Trustee – Criminon
- Director – Hollywood Education and Learning Projects (HELP)
- Director and Vice President – Association for Better Living and Education (ABLE)

Additionally, the following Directors of Narconon Oklahoma (who are also Oklahoma Defendants in this lawsuit) hold positions within the upper echelon of the Narconon Network: Defendant Michael St. Amand is a Trustee of Narconon Fresh Start (with Defendant Clark Carr) and Defendant Gary Smith is listed as the CEO as well as a Key Employee of Narconon International. Finally, Narconon Fresh Start's Vice President and Secretary is Michael Kobrin, who is the husband of Helena Kobrin, the captive lawyer for the Defendant Church of Scientology International. (See Subsection 3 below).

---

connection between the Defendants within the particular groups. For example, Defendants Robert Hernandez, his wife Defendant Daphna Hernandez, and Defendant FONI (founded by Mr. and Mrs. Hernandez) filed three separate motions, yet grouped themselves with other seemingly unrelated Defendants. Such convoluted filings lead one to believe Defendants are attempting to hide or minimize the incestuous nature of the Narconon Network.

Narconon International recently has been the subject of litigation in Nevada in the matter of *Geanacopulos v. Narconon Fresh Start d/b/a Rainbow Canyon Retreat, et al.* U.S. District Court for the District of Nevada, Case No. 2:14-CV-629 JCM (NJK), and has similarly filed a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(2). Nevada and the Ninth Circuit's standards concerning jurisdiction are nearly identical to Oklahoma and the Tenth Circuit. On August 18, 2014, the District Court in *Geanacopulos* held that Narconon International was subject to jurisdiction in Nevada. [See *Geanacopulos* Order, Exhibit 37]. The court specifically found that it was Narconon International's website, www.narconon.org, is more than a passive website - instead it directly advertises to locations throughout the United States, thereby constituting purposeful availment. Additionally, the court found that Narconon International takes no steps on its website to distinguish itself from the Narconon locations as a mere licensor. Thus, based solely on Narconon International's contacts with Nevada through the website, the Court found jurisdiction was proper. The court further found that it was Narconon International's advertising of the facility that gave rise to the specific allegations in the complaint.

The same analysis can be used here to find Narconon International purposefully availed itself of the jurisdiction in Oklahoma. Narconon International's website similarly directs consumers to Narconon Arrowhead pages.. Notably, the information contained on the page entitled "Narconon Centers" concerning Narconon Arrowhead is immediately following the Narconon Nevada information. [See "Narconon Centers" page of www.narconon.org, Exhibit 41].

Additionally, Narconon International's website provides a message directly from President Clark Carr, which provides further support to the findings in the *Geanacopulos* Order. [See Message from the President of Narconon International, attached as Ex. 42]. In his message,

Carr first describes the success of the L. Ron Hubbard technology and how it is "as effective in Nepal as in **Oklahoma**." (emphasis added).  Mr. Carr goes on to "personally invite" the reader to visit a Narconon Center and to talk to "our" students.  The entire message centers on "our work," "our resources" and "our results."   The President's message directly advertises to locations throughout the United States, especially Oklahoma, and takes no steps to distinguish Narconon International from the Narconon locations as a mere licensor.

### 2)        Narconon International's Actual Operational Control

The incestuous and interconnected nature of this network is further exhibited through Narconon International's exercise of *de facto* control over all Narconons around the world. Despite Clark Carr's self-serving Declarations, Plaintiffs reference a series of exhibits directly rebutting Clark Carr's self-serving Declaration attached to Narconon International's motion. Most striking are the statements of non-party witness Eric Tenorio.  In July 2014, Mr. Tenorio provided an Affidavit in the *Geanacopulos* matter, which set forth details concerning Narconon International's actual control over the Narconon Network. Mr. Tenorio is the former Executive Director of Freedom Center. [See the *Geanacopulos* Affidavit of Eric Tenorio, Exhibit 31]. During his twelve (12) years working with Narconon in various roles, Mr. Tenorio personally observed the direct micromanagement of Narconon International and ABLE exercise over the individual Narconon centers, such as Freedom Center. [Ex. 31].  Specifically, Narconon and ABLE must approve all websites an individual Narconon center **uses** before the site can "go live" on the Internet or before a site's content is **changed**. [Ex. 31].

In support of Plaintiffs' Responses to the various Motions to Dismiss in this matter, Mr. Tenorio also provided a Second Affidavit [Exhibit "43"], dated September 2, 2014, which provides additional details in support of Plaintiffs' claims.  Based upon Mr. Tenorio's roles with

various Narconon centers, he has personal knowledge concerning the interconnectivity of the Narconon Network and its ties to the Church of Scientology. [Ex. 43 at ¶ 8].  He witnessed the Narconon Network's purposeful misuse of Plaintiffs' marks, logos and certifications in order to entice vulnerable people into the Narconon Network and the Church of Scientology. [Ex. 43 at ¶ 9]. Over two years ago, Mr. Tenorio warned Defendants Gary Smith, Michael Gosselin, and Kathy Gosselin regarding the risks in falsifying credentials and misusing Plaintiffs' logos. [Ex. 43 at ¶ 10].  Additionally, Mr. Tenorio attempted to dissuade Brian Kuehne (Executive Director of Narconon Freedom Center) and Phil Hart (Trustee and Executive Director of Defendant Narconon International) from continuing to falsify credentials from NAFC and ACCFC. [Ex. 43 at ¶ 10].

Mr. Tenorio's statements in both Affidavits show the continued control exercised by the lead organizations Defendant Narconon International and Defendant ABLE, which are under the specific control of Defendant RTC.  These controlling entities set forth the common scheme in which the remaining Defendants participate to promote the Narconon Network and ultimately entice individuals into the Church of Scientology. [Dkt. 3 at ¶¶ 115, 119, 246, 253-254, and 256]. The web of the scheme extends through the United States and Canada, with the substantial portions of the conspiracy taking place in Oklahoma at Narconon's flagship facility. [See Plaintiffs' Response to RTC's Motion to Dismiss, Dkt. 261].

   3)   **Narconon International's Administrative Control**

Narconon International's hands-on, direct control over the individual members of the Narconon Network is further exhibited through Narconon International's involvement in the allegations against Defendant Narconon Georgia. In 2008, Patrick Desmond died while receiving treatment at the Narconon Georgia facility and his family thereafter filed suit against Narconon

Georgia and Narconon International.  Mr. Desmond's lawsuit revealed the scope of Narconon International's direct control.

Jette McGregor (wife of Defendant Kent McGregor) was an executive and employee with Narconon of Oklahoma[5], but was requested by Narconon International to investigate Narconon Georgia. [See Deposition of Jette McGregor, Ex. 44, at pp. 5-6, 22-25, 27, 46-47, 50, 62-70]. Narconon International, through its director of legal affairs, sent an instructional email to Craig Silver, deputy director of legal affairs of Narconon of Oklahoma entitled "Narconon Georgia Inspection Project."  According to the email, the "major target" was Narconon Georgia, and the "purpose" was to perform a thorough inspection.  [See Email re: Inspection Project at Narconon GA, Ex. 45].  In her investigation, Mrs. McGregor was asked to do a technical review of Narconon Georgia on behalf of Narconon International. [Ex. 45].  This review constituted not only the performance of Narconon Georgia, but also the day-to-day operations and a "random" audit of client files (which included Mr. Desmond's file).

Ms. McGregor was purportedly not affiliated with Narconon International, but was only an employee of Narconon of Oklahoma. [Ex. 44, *supra*]. Yet, Narconon International apparently had the authority to send an employee from purportedly unrelated entity Narconon of Oklahoma to purportedly unrelated entity Narconon Georgia in order to review the facility that is allegedly not under the control of Narconon International.  It should be noted also that, prior to Jette McGregor's deposition, Ms. McGregor was contacted by Helena Kobrin and Rick Moxon for the purpose of discerning one thing: how Ms. McGregor was going testify about the connections between the Church of Scientology and Narconon International. [Ex. 44 at pp. 21-22]. Interestingly, the law firm of Moxon & Kobrin is rumored to be the captive firm for the Church

---

[5] Jette McGregor is also the former Executive Director and President of Narconon Fresh Start.

of Scientology, but was representing Narconon International in Mr. Desmond's case. [See Moxon & Kobrin Wikipedia page, Ex. 46].

### 4)    Narconon International's Actions Constitute a Tacit Admission

Based on Ms. McGregor's testimony, it defies logic for Narconon International to claim it does not control the individual Narconon Treatment Centers.   The Narconon Treatment Centers, such as Narconon Georgia and Narconon Oklahoma, are drug treatment and rehabilitation facilities.  [Dkt. 3 at ¶ 112].  Pursuant to the Federal Rules of Confidentiality, any drug treatment facility that receives governmental assistance shall strictly maintain the confidentiality of the participants in its program unless the disclosure falls within a specific exception. 42 U.S.C. § 290dd-2(a).  Pursuant to the regulations enacted pursuant to the authority of 42 U.S.C. § 290dd-2(g), this protection remains in effect even after the death of the participant. 42 C.F.R. § 2.15.   A drug treatment facility is federally assisted if granted tax-exempt status by the Internal Revenue Service. 42 C.F.R. § 2.12 (b)(4).   Disclosure of confidential participant's records may only be done in limited circumstances as set forth in 42 U.S.C. § 290dd-2(b).  If the disclosure does not fall within Section (b), it must meet an exception set forth in the statute or the regulations.  The relevant exception applicable to this case is found in 42 C.F.R. § 2.12(c)(3), "[c]ommunication within a program or between a program and an entity having direct administrative control over that program."

Narconon Georgia has been granted tax-exempt status by the I.R.S., and therefore falls within the purview of the Federal Rules of Confidentiality. [See Declaration of Thomas Davis, Dkt. 284-1 at ¶ 9].  Thus, Narconon Georgia is prevented from sharing Mr. Desmond's or any other participant's file unless an exception applies.  Additionally, as an entity receiving protected information, Narconon International is restricted in its disclosure of confidential information

received.  When disclosure is made within a program or to an entity having direct control, that entity is precluded from disclosing. 42 C.F.R. § 2.12(d)(2). In the Georgia investigation (which is likely not an isolated incident) Narconon Georgia disclosed confidential information to an employee of Narconon Oklahoma under the direction of Narconon International. Defendant Narconon International's activities concerning patients' records constitute tacit admission of Narconon International's direct control over the Narconon Treatment Centers.

### 5)       Narconon International's High School Education Program

In 2006 and 2008, Defendant Robert Wiggins ("Wiggins"), with Narconon International, teamed with Defendants Narconon Arrowhead, FONI, Golden Millennium, R. Hernandez, D. Hernandez, as well as related individuals and entities Narconon Stone Hawk and Patty Schwartz (Officer of Friends of Narconon and Narconon Fresh Start) to create a series of movies. [IMDb credits for Xtasy: The Real Story – Part 1 and Part 2, Exhibit 47].  Additionally, FONI's website offered for sale on four different URLs various videos and Educator's Kits starring Wiggins. [See FONI Website drug education videos, Exhibit 48]. In the descriptions, FONI advertised Wiggins' as CCDC (Certified Chemical Dependency Counselor) as recently as January 2014. [Ex. 48].   These videos are yet another example of Defendant Narconon International's direct involvement and interconnectivity with the Oklahoma defendants.

In sum, Narconon International attempts to make distinctions about its role and distinguish itself from the other Defendants in an effort to detract from the reality of the situation.  The intertwining and interconnectedness of the Defendants is convoluted and intricate, but a common thread runs through each: Narconon and the Church of Scientology.  Plaintiffs sufficiently alleged in the Complaint and support with evidence herein in contravention of Defendant Clark Carr's Declaration that Narconon International is not only directly involved in

the infringement and civil conspiracy stemming from the core Narconon location in Oklahoma, but also direct controlling all members of the Narconon Network.  As set forth herein, Defendant Narconon International's Motion to Dismiss should be denied.

### ARGUMENTS AND AUTHORITIES

### I.    STANDARD FOR MOTION TO DISMISS UNDER 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

When faced with a motion to dismiss based upon FED.R.CIV.P. Rule 12(b)(2), "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff's burden to make the prima facie showing in the early stages of litigation is light. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (internal quotations omitted).  "[O]n a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappu*, 710 F.2d 1449, 1454 (10th Cir. 1983), quoting *Wyatt v. Kaplan*, 686 F.2d 276, 282 n. 13 (5th Cir. 1982). If contradicted by affidavits, the Plaintiff bears the burden of responding with evidence to show a dispute. *Id*.  Any factual disputes will be resolved in favor of the plaintiff.  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).   Once the prima facie showing is made by the plaintiff, the burden shifts onto the defendant to convincingly demonstrate the exercise of personal jurisdiction would offend the traditional notions of fair play and substantial injustice.  *OMI Holdings*, 149 F.3d at 1091.

In order for the court to exercise personal jurisdiction over a defendant, the defendant must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend the traditional notions of fair play and substantial justice.  *Shrader*, 633 F.3d at

1235, citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008).   The contacts may either be general, meaning for any lawsuit, or specific, meaning for a lawsuit arising out of particular forum-related activities. *Id.*   General jurisdiction is based on the "continuous and systematic" contacts with the forum state. *Id.*  By contrast, specific jurisdiction requires a showing that 1) the out-of-state defendant purposefully directed his activities at residents of the forum state, and 2) that plaintiff's injuries arise out of the defendant's forum-related activities.   *Id*.   Once all conditions are met, the court then determines whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Id*. at 1240.  This requires a determination that the exercise of jurisdiction is reasonable in the circumstances.  *Intercon*, 205 F.3d at 1247.   The court reviews the following factors in deciding whether the exercise of jurisdiction is reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1249.  The interplay between the minimum contacts analysis and the determination of reasonableness of the exercise of jurisdiction by the Court evokes a sliding scale analysis, e.g. "an exceptionally strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *OMI Holdings*, 149 F.3d at 1092, quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

## II.    PERSONAL JURISDICTION EXISTS

### a.  General Jurisdiction Exists

As set forth in great detail in the Relevant Facts section above, Narconon International's general contacts with Oklahoma involved the direct administrative control over Defendant

Narconon Arrowhead, notably including the website of Narconon Oklahoma and the review of Narconon Treatment Centers' confidential participant files.  The Narconon International website itself involves more than merely posting information on a website that is available in Oklahoma.  Instead, www.narconon.org directly targets an Oklahoma audience and seeks to do business with Oklahoma residents. *See Schrader*, *supra*, 633 F.3d at 1243 (general jurisdiction sweeps more broadly in its review of the internet activities). Narconon International hosted one of three of its conferences in Oklahoma two years ago.   Additionally, there is significant overlap and interconnectivity between and amongst the key individuals controlling both Narconon International and Narconon Oklahoma.  Each of these factors exemplifies a series of systematic and continuous contacts with this forum for the purpose of establishing general jurisdiction.

### b.  Specific Jurisdiction Exists

Narconon International purposefully directed its activities towards Oklahoma and did so in a manner that caused Plaintiffs' damages through their direct infringement, as well as leadership and participation in the infringement and civil conspiracy stemming from Oklahoma. In *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) sets forth the Tenth Circuit's position on passive websites for he purpose of establishing jurisdiction. ("The maintenance of a web site does not in and of itself subject the owner operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."). As *Shrader* noted its restrictive approach requires "the forum state itself must be the focal point of the tort."  *Id*. at 1244, quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1074 n. 9 (10th Cir. 2008).  Narconon International ignores the fact that Oklahoma is the focal point of the infringement and civil conspiracy, which is more than sufficient to trigger jurisdiction – even under the *Shrader* analysis.

Additionally, personal jurisdiction is triggered when the defendant is liable for contributory infringement. The Supreme Court has recognized that contributory liability under the Lanham Act exists beyond the party who actually misused the trademark. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853-854, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982)*. Even if the defendant does not actually use the mark, he can be responsible for infringement if he a) induces another to infringe or 2) if it continues to supply its product to someone it knows or has reason to know is infringing. *Id*.    Contributory liability for infringement is predicated upon direct infringement by another party. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013).   Additionally, contributory liability does not distinguish between infringement pursuant to § 32 of the Lanham Act, § 43 of the Lanham Act or common law, which contain nearly identical elements except that registration of the mark provides prima facie evidence of both the mark's validity and exclusivity under § 32. *See Id*. at 1238 and 1240; *See also Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2009).    Through its knowing participation in the scheme to misuse and misappropriate Plaintiffs' certifications, marks, logo, and business reputation, Defendant Narconon International should be held responsible for the infringing activities of all Defendants.

The United States District Court for the Central District of California, in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F.Supp.2d 1073 (C.D.Cal. 2003) [See Exhibit "35"], found specific jurisdiction where the Defendant was involved in contributory infringement connected to the forum state.  The Supreme Court, in *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486-87, 79 L.Ed.2d 804 (1984), recognized that purposeful availment is shown where the *effects* of a Defendants' conduct is felt in the forum state.  The Court in *Grokster*

relied upon the "effects test" in its holding that contributory infringement could provide the basis for specific jurisdiction upon a showing that contributory infringement will lie where the "defendant contributed to the infringement, i.e., knowingly and intentionally assisted, induced or caused the infringement." *Grokster*, 243 F.Supp.2d at 1089.   *Grokster* sets forth a perfect analysis for specific jurisdiction as it relates to contributory infringement. Since *Grokster*'s publication date, it has not received any negative treatment on this issue.   Instead, it was cited with approval in the U.S. District Court for the Southern District of New York. *See Motown Record Co., L.P. v. iMesh.Com, Inc.*, 2004 WL 503720 (S.D.N.Y. March 12, 2004). [See Ex. 36].

Based on Narconon International's contributory involvement in the infringement of its Co-Defendants and the effects in Oklahoma, specific jurisdiction exists.   The implementation and maintenance of the marketing plan to wrongfully use Plaintiffs' marks to bolster the Narconon Network, as well as the evidence of the direct control exercised by Narconon International, shows Narconon International's knowledge and willingness to contribute to the infringing activities of its Co-Defendants.

Moreover, the overt activities of a co-conspirator within the forum may subject the other co-conspirator to the jurisdiction of the form.  *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013), citing *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007).   The main requirement to trigger jurisdiction through conspiracy is that ***at least one*** of the conspirators has pursued the conspiracy within the forum state. *Id*. (emphasis added). Narconon International only cites to a portion of *Melea* and attempts to use that narrow portion to set forth a bright line rule that does not exist.   However, Narconon International ignores the fact that the Tenth Circuit acknowledges the circumstance where "a co-conspirator's presence within the forum might

reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, *or substantial steps in furtherance of the conspiracy* are taken in the forum." *Melea*, 511 F.3d at 1070 (emphasis added).

In this case (and as set forth herein) the largest grouping of Defendants are located in this forum, including the main players in the civil conspiracy: Defendants Narconon Arrowhead, The Pita Group, Inc., Gary Smith, Derry Hallmark, Kent McGregor. [Complaint at ¶¶ 31, 32, 41, 86, 113, 116, 127-129, 137-139, 142-144, 161-163, 169-171, 177, 188, 198,199, 205, 206]. McGregor personally offered the falsified C.C.D.C. certifications, claimed a relationship to Plaintiffs that did not exist, and owns and operates numerous websites posting the falsified credentials of other Defendants. [Complaint at ¶¶ 159-163, 170, and 198-199].

As set forth in the Statement of Relevant Facts section above, it is precisely the wrongful and damaging activities committed by the Oklahoma Defendants against Plaintiffs in which Narconon International participated and continues to participate. The crux of Narconon International's specific harmful activities and the connection to the Defendants located in this forum are more than sufficient to establish specific jurisdiction in the Eastern District of Oklahoma..

### c.   The Exercise of Jurisdiction is Reasonable under the Circumstances

An analysis of the five factors weigh heavily in favor of finding reasonableness in the exercise of personal jurisdiction against Narconon International in this case.  Particularly:

**1) Burden on the Defendant –** Although filed in Oklahoma, the ease of electronic filing in Federal Court makes this forum accessible from any location with Internet.  As to Narconon International in particular, Narconon International did not appear to have any challenges finding

local counsel.  Specifically, the firm who represents Narconon International represents four (4) defendants (at last count, since defendants continue to be served and retaining counsel on an ongoing basis) and are already familiar with the facts of this case.  This familiarity and ability to consolidate motions, such as this Motion, greatly reduces the costs and alleged burden to the Defendants to this case.  Further, the allegations in this Complaint involve wrongful acts across the United States, Canada, and the United Kingdom.  Since the majority of the Defendants are located in the United States, the largest number of individual defendants are located in Oklahoma, and the hub of the civil conspiracy is in the Eastern District of Oklahoma, the Eastern District of Oklahoma is the most centrally located forum.

Plaintiffs were not required to devise creative and imaginative arguments to justify leaving their home state of Indiana and choosing to file the instant case in the Eastern District of Oklahoma; they merely had to follow the trail of breadcrumbs left by RTC, COSI, Narconon International, governed by autocratic mastermind David Miscavige and utilizing the hands and feet of the other Defendants. The trail led Plaintiffs straight to the epicenter at Narconon Arrowhead in the Eastern District of Oklahoma.  Thus, the first factor weighs in favor of exercising jurisdiction.

**2) Forum state's interest in resolving the dispute –** This State houses the majority of the wrongful activities set forth in Plaintiffs' Complaint with the largest number of Defendants being citizens of this State.  Additionally, Narconon Arrowhead is considered by the Church of Scientology to be the hub of the Narconon Network.  Oklahoma has an interest in adjudicating a dispute like this, which involves many non-residents because the conduct affects Oklahoma residents. *See OMI Holdings*, *supra*, 149 F.3d at 1096.   Oklahoma residents are targets of

Defendants' campaign to grow Narconon Arrowhead, the Narconon Network and consequently the Church of Scientology.  Accordingly, factor 2 weighs in favor of exercising jurisdiction.

   **3) Plaintiffs' interest in receiving convenient and effective relief –** Plaintiffs have recently uncovered this enormous conspiracy involving at least eighty-two (82) separate defendants.  If Plaintiffs were required to file a separate lawsuit for each Defendant, Plaintiffs' rights would be significantly hindered.  Plaintiffs, including the Non-Profit NAFC, do not have the expansive and unlimited resources to pursue litigation on such a large scale. Instead, the burden would be so overwhelming as to prevent Plaintiffs from being to pursue their claims at all.  Plaintiffs' interest far outweighs Defendants' interest in this matter.  Therefore, factor 3 weighs in favor of exercising jurisdiction.

   **4) Interstate judicial system's interest in obtaining the most efficient resolution of controversies –** The key inquiries for this portion of the analysis are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, *supra*, 149 F.3d at 1097.  Each of these inquiries, mostly discussed in paragraphs 1-3 above, favors the Court exercising jurisdiction in this case.  A majority of the material witnesses are located in Oklahoma, the epicenter of the underlying wrongs occurred in Oklahoma, and substantial steps in furtherance of the conspiracy occurred in Oklahoma. Further, as discussed in paragraph 3 above, multiple depositions of the same defendants hardly constitutes the most efficient resolution of controversies. Finally, the law governing is federal, and piecemeal litigation would most certainly result if Plaintiffs were forced to dismiss certain Defendants.   Accordingly, factor 4 weighs in favor of exercising jurisdiction.

**5) Shared interest of the several states in further fundamental substantive social policies –** Public policy considerations are endemic to this case.  People put their lives, the lives of their children, spouses, parents, etc., into the hands of professionals working in the addiction fields.  The hijacking of the Plaintiffs' marks and accreditation creates a false aura of expertise where none exists, and the public, as well as Plaintiffs, are damaged as a result.  While some Defendants argue that the violations were unintentional or focus on the relative size of the violation in the scheme, it only underscores the importance of this Court exercising jurisdiction to maintain a single lawsuit rather than burdening the innocent Plaintiffs with the necessity of filing lawsuits in numerous states.  Litigating this case together in Oklahoma is analogous to having all the pieces of a jigsaw puzzle in one place.  Permitting Defendants to scatter the pieces of the jigsaw puzzle throughout various jurisdictions across the country will prevent the entire picture, the civil conspiracy, from being exposed and uncovered.

Further, because this lawsuit is premised upon federal law, several states share an interest with Oklahoma and the policies embodied by the federal law.  As for the international Defendants, they have all willingly participated in the growth of the Narconon Network, which is a United States network.  The foreign citizens chose to conduct business with Narconon and the laws governing this dispute are in the United States.  For these reasons, factor 5 weighs in favor of exercising jurisdiction.

## III.   PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES CLAIMS AGAINST THE MOVING DEFENDANTS

Due to Narconon International's incorporation of the Motion to Dismiss and Brief in Support of Defendants the Pita Group, Inc., et al., [Dkt. 287, 288]. Plaintiffs hereby incorporate by reference in their entirety the Response to the Motion to Dismiss of the Pita Group, Inc., et al. and all other Responses to Defendants Motions to Dismiss that have been filed in this matter.

IV.    ALTERNATIVE REQUEST FOR LEAVE TO AMEND

Assuming *arguendo* the Court finds Plaintiffs failed to allege sufficient facts under FED.R.CIV.P. Rule 12(b)(6), Plaintiffs hereby request leave to amend.  Pursuant to FED.R.CIV.P. Rule 15(a), leave to amend shall be freely given when justice so requires.   The liberal policy allowing for amendments reflects the general policy in the American system that claims should be heard on their merits.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Unless there is an apparent or declared reason, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party or futility of the amendment, the court's refusal to allow an amendment is an abuse of discretion. *Id*.

This matter remains in its infancy.  Only two (2) Defendants have answered the Complaint. Approximately half of the Defendants have filed responsive motions, many of which have not yet completed their briefing cycle and none upon which the Court has ruled.  Plaintiffs have not delayed in this request or made any previous applications to amend.  Additionally, as the Court can see in the evidence submitted concerning personal jurisdiction, there is more than sufficient facts to be alleged concerning Defendants' roles in the conspiracy and the amendment would not be futile.  Because the request is timely, made in good faith, without prejudice to the Defendants and is not futile, Plaintiffs respectfully request the Court grant Plaintiffs leave to amend, if necessary.

V.    PLAINTIFFS OBJECT TO THE REQUEST FOR JUDICIAL NOTICE

Narconon International attached to their Motion to Dismiss a Request for Judicial Notice concerning the 2014 posting on the California Department of Health Care Services website about Counselor Certification Organizations.  Notwithstanding the failure to separate the motion as its

own pleading in violation of LCvR 7.1(c), Narconon International's Request for Judicial Notice should be disregarded because it does not fall within the category of documents that would be appropriate for the Court's consideration in its Motion to Dismiss.  First, it comes in the middle of a paragraph as a non sequitur between discussions about a C.C.D.C. reference in California and damages to Plaintiffs in Oklahoma.  Narconon International does not state the purpose of requiring judicial notice of the 2014 certification rolls in California or how it supports Defendant's argument. Additionally, "documents [receiving judicial notice] may only be considered to show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). It is unclear what purpose Defendants are seeking to use the documents other than to go to the merits of the value of Plaintiffs' certification.  While Plaintiffs may, in fact, utilize such information in support of Plaintiffs' damages allegations[6] [Dkt. 3 at ¶ 258], that issue involves the merits of this dispute and does not support or otherwise trigger the analysis for a motion to dismiss under FED.R.CIV.P. Rules 12(b)(2) and (b)(6).    Accordingly, Plaintiffs respectfully request the Court deny Defendants' Request for Judicial Notice at this time.

### CONCLUSION

As set forth herein, Plaintiffs have presented more than sufficient facts to make a prima facie showing of minimum contacts in the State of Oklahoma to establish personal jurisdiction over Narconon International.  Under the circumstances of this case, all of the relevant factors weigh in favor of the reasonableness of this Court exercising personal jurisdiction over Narconon International.  Additionally, Plaintiffs have set forth a series of well-pleaded facts sufficient to

---

[6] In his Declaration, Defendant Clark Carr admits to refusing to renew his certification as a consequence of this lack of State approval. [Dkt. 294-1 at ¶ 6].

set forth Plaintiffs' claims against all Defendants.  Alternatively, Plaintiffs request leave to amend the Complaint if necessary.

WHEREFORE, Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors respectfully pray the Court deny Defendant Narconon International's Motion to Dismiss and for such further relief as the Court deems just and proper.

Respectfully submitted,

**KEESLING LAW GROUP, PLLC**

_s/ David R. Keesling_
David R. Keesling, OBA # 17881
Heidi L. Shadid, OBA # 22897
Sloane Ryan Lile, OBA # 21342
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, OK 74103
(918) 924-5101 Phone
(918) 512-4888 Fax
David@KLGattorneys.com
Heidi@KLGattorneys.com
Sloane@KLGattorneys.com

_Attorneys for Plaintiffs National Association of_
_Forensic Counselors, Inc. and American_
_Academy of Certified Forensic Counselors, Inc._
_d/b/a ACCFC of Certified Forensic Counselors_

### CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Charles D. Neal
Donald M. Bingham
David L. Bryant
Wm. Gregory James
M. David Riggs
John H. Tucker
Richard P. Hix
David E. Keglovits
John J. Carwile
Amelia A. Fogleman
Colin H. Tucker
Stacie L. Hixon
Rachel D. Parrilli
Kerry R. Lewis
Denelda L. Richardson
Alison A. Verret
Nathaniel Haskins
Robert D. Nelon
Thomas M. O'Leary
Todd A. Nelson

s/ David R. Keesling,
*Attorney for Plaintiffs*