# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. NATIONAL ASSOCIATION OF FORENSIC COUNSELORS, INC., a Nevada Non-Profit Corporation, and<br>2. AMERICAN ACADEMY OF CERTIFIED FORENSIC COUNSELORS, INC., d/b/a AMERICAN COLLEGE OF CERTIFIED FORENSIC COUNSELORS, a Nevada For-Profit Corporation,<br><br>     Plaintiffs,<br><br>v.<br><br>1. NARCONON INTERNATIONAL, a California Non-Profit Corporation, et al.<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 14-cv-00187-RAW |

## PLAINTIFFS' RESPONSE AND INCORPORATED BRIEF IN OPPOSITION TO DEFENDANT ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL'S MOTION TO DISMISS

Respectfully submitted,

**KEESLING LAW GROUP, PLLC**

_s/ David R. Keesling_
David R. Keesling, OBA # 17881
Heidi L. Shadid, OBA # 22897
Sloane Ryan Lile, OBA # 21342
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, OK 74103
(918) 924-5101 Phone
(918) 512-4888 Fax
David@KLGattorneys.com
Heidi@KLGattorneys.com
Sloane@KLGattorneys.com

*Attorneys for Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a ACCFC of Certified Forensic Counselors*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           1) Direct Activities in Oklahoma . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           2) ABLE's Actual Operational Control of Narconon Entities . . . . . . . . 9
           3) ABLE's Role in the Overarching Goals to Promote COSI . . . . . . . . 13

*ARGUMENTS AND AUTHORITIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    I.    STANDARD FOR MOTION TO DISMISS UNDER 12(b)(2) FOR LACK
         OF PERSONAL JURISDICTION         . . . . . . . . . . . . . . . . . . . . . . 15

    II.   PERSONAL JURISDICTION EXISTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        a.    General Jurisdiction Exists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        b.    Specific Jurisdiction Exists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        c.    The Exercise of Jurisdiction is Reasonable under the Circumstances . . . 20
           1) Burden on the Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           2) Forum state's interest in resolving the dispute . . . . . . . . . . . . . . . 21
           3) Plaintiffs' interest in receiving convenient and effective relief . . . . . 21
           4) Interstate judicial system's interest in obtaining the most
               efficient resolution of controversies . . . . . . . . . . . . . . . . . . . . . . 22
           5) Shared interest of the several states in further fundamental
               substantive social policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    III.  PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES CLAIMS
         AGAINST THE MOVING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    IV.  ALTERNATIVE REQUEST FOR LEAVE TO AMEND . . . . . . . . . . . . . . . . 23

    V.   PLAINTIFFS OBJECT TO THE REQUEST FOR JUDICIAL NOTICE . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

*Cases*

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
    722 F.3d 1229 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*American Land Program, Inc. v. Bonaventura Uitgevers Maatschappu*,
    710 F.2d 1449 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Calder v. Jones*,
    465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Foman v. Davis*,
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Geanacopulos v. Narconon Fresh Start d/b/a Rainbow Canyon Retreat, et al.*,
    2014 WL 4079509 (D. Nevada) (Non-Published) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*,
    205 F.3d 1244 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Melea, Ltd. v. Jawer SA*,
    511 F.3d 1060 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    243 F.Supp.2d 1073 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Motown Record Co., L.P. v. iMesh.Com, Inc.*,
    2004 WL 503720 (S.D.N.Y.) (Unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Newsome v. Gallacher*,
    722 F.3d 1257 (10th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
    149 F.3d 1086 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 21, 22

*Shrader v. Bittinger*,
    633 F.3d 1235 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15, 16, 17

*Tal v. Hogan,*
    453 F.3d 1244 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Ticketmaster-New York, Inc. v. Alioto,*
    26 F.3d 201 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research,*
    527 F.3d 1045 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wyatt v. Kaplan,*
    686 F.2d 276 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**Statutes**

42 U.S.C. § 1114 (Lanham Act § 32) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

42 U.S.C. § 1125 (Lanham Act § 43) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Federal Rules**

Fed.R.Civ.P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 15, 25

Fed.R.Civ.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

Fed.R.Civ.P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

COME NOW, Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") and Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC") (collectively "Plaintiffs"), by and through their counsel of record Keesling Law Group, PLLC, and pursuant to FED.R.CIV.P. Rule 12(b)(2) hereby submit Plaintiffs' Response and Incorporated Brief in Opposition to Defendant Association for a Better Living and Education International's Motion to Dismiss.  In support thereof, Plaintiffs state as follows:

### *INTRODUCTION*

This case involves Defendants' theft of Plaintiffs' logos, trademarks, certifications, and established business reputation in order to bait vulnerable victims into the Scientology religion. Plaintiffs operate a certification board for forensic counselors.   In order to operate the certification board, Plaintiffs have established a series of standards, skills, training and competencies required for professionals working with criminal offenders in addictions[1] to enhance the delivery of safe and effective treatment.  This lawsuit involves the misappropriation and misuse of Plaintiffs' logos, trademarks and certifications by Defendants for the purposes of marketing Narconon programs for profits and ultimately promoting the Church of Scientology, at the expense of Plaintiffs.  Defendant Association for Better Living and Education International ("ABLE") was added to the Complaint based upon its role as substantial contributor coordinating the scheme to utilize Plaintiffs' logos, trademarks, certifications, and established business reputation to attract individuals into the Narconon Network and, consequently, the Church of Scientology.

---

[1] The addictions certifications are the only relevant certifications for the purposes of this case. However, Plaintiffs also promote competency and training in the areas of criminal justice, mental health and corrections.

### STATEMENT OF RELEVANT FACTS

Based on the overarching breadth of the infringement and conspiracy, and to avoid unnecessary duplication, Plaintiffs incorporate by reference their Response to the Motion to Dismiss filed by Defendant Religious Technology Center ("RTC"), as well as all concurrently and previously filed Responses to Motions to Dismiss. Specifically, Plaintiffs incorporate the paragraphs setting forth the common scheme run by RTC and the exhibits 1 – 26[2] referenced therein. *For the clarity of the Record and for judicial economy, Plaintiffs are utilizing a continuous numbering scheme and will be separately filing an appendix with the exhibits to all concurrently filed Responses to the Motions to Dismiss rather than filing the exhibits piecemeal and duplicative with the individual Responses. Additionally, because Plaintiffs had also filed a Response to the Motion to Dismiss of Defendant David Lee with its own exhibits beginning at No. 1, Plaintiffs will list all exhibits from the David Lee Response as "DLEx."*

Defendant ABLE is a key player developing and executing the scheme described in the Complaint by virtue of their overarching participation, but also their control and leadership in the misappropriation and misuse of Plaintiffs' intellectual property with the obvious goals to further the profiteering of the Narconon Network and ultimately the Church of Scientology at Plaintiffs' expense. [Dkt. 3 at ¶¶ 115, 253]. ABLE was formed as a Scientology organization for the purpose of expanding all Scientology activities and organizations, using programs such as the promotion of the drug rehabilitation fields. [Dkt. 3 at ¶ 246, 254].

One of ABLE's fundamental tools used for the expansion of Scientology is the Narconon Network. [Dkt. 3 at ¶ 246]. In conjunction with RTC, ABLE strictly controls Narconon International as an arm of the Defendant Church of Scientology International ("COSI") through

---

[2] Plaintiffs will provide the Court with a courtesy copy of all continuously numbered exhibits for the Court's convenience.

licensing agreements concerning L. Ron Hubbard's teachings. [Dkt. 3 at ¶ 247]. The promotion of the Narconon Network is done for the purpose of Scientology to "clear" the world and for a planetary dissemination of Scientology religious technology. [Dkt. 3 at ¶ 255].  ABLE, RTC, COSI and Narconon International seek to draw members into the Church of Scientology and increase their profit at the expense of Plaintiffs. [Dkt. 3 at ¶ 256].

Narconon International, a subsidiary of ABLE, set forth a marketing program that uses NAFC credentials (regardless of veracity) to bolster the Narconon Network. [Dkt. 3 at ¶ 114, 119].  This scheme involved the use of the NAFC certifications to augment the public perception of the Narconon Network and its counselors. [Dkt. 3 at ¶ 249].

In addition to showing ABLE's role as a key player in Defendants' scheme, Plaintiffs' Complaint sets forth, in great detail, ABLE's direct violations and intricate participation in the infringement and civil conspiracy. There are a series of Canadian Narconon e-mail addresses, including www.narconon.ca, www.news.narconon.ca, www.narconon.bc.ca, and www.narconon.on.ca, with ABLE listed as the administrative contact. [Dkt. 3 at ¶ 117].  The site www.news.narconon.ca falsely advertises Defendant Nick Hayes as a Certified Chemical Dependency Counselor, despite the expiration of his certificate more than five (5) years ago. [Dkt. 3 at ¶ 118].   This year, ABLE published an issue of its "Solutions" magazine, which included an interview with Defendant Kathy Dion and provided her five-year expired C.C.D.C. after her name. [Dkt. 3 at 231].

Additionally, the facts listed herein contradict and rebut the self-serving statements provided in the Declaration of Rubina Qureshi, attached to Narconon International's Motion. [Dkt. 292-1].  For purposes of establishing jurisdiction, all factual disputes must be resolved in Plaintiffs' favor.  *Shrader v. Bittinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The following

disputed facts highlight ABLE's extensive control and connection to the infringement and civil conspiracy substantially carried out in Oklahoma, evidencing the disputes in the facts as alleged by Ms. Qureshi:

    **1)**       **Direct Activities in Oklahoma**

As previously set forth by Plaintiffs in their Response to RTC's Motion to Dismiss, Narconon Arrowhead is the flagship and epicenter of the Narconon Network. [Exhibits 1 and 7] As such, Narconon Arrowhead receives attention beyond the standard control exhibited by ABLE over the Narconon Centers. [*See* subsection 2 below].   Because of Defendant David Miscavige's intricate participation in Narconon Arrowhead, he required weekly reports from ABLE detailing the statistics, accomplishments and any challenges with the center. [Exhibit 2 at ¶ 12].   Attached as Exhibit 13 to Plaintiffs' Response to RTC's Motion to Dismiss is a photograph of Defendants Mr. Miscavige, Gary Smith and others.   The two women standing at Defendant David Miscavige's right side are ABLE Representatives Laurie Zurn and Rena Weinberg. [Second Affidavit of Karla Taylor, Exhibit "27" at ¶ 2].   Specifically, Ms. Zurn holds corporate offices with several relevant entities, but most notably she is a Trustee of Narconon International, a Trustee of Narconon Arrowhead, and a Director with ABLE. [See Excerpts from Narconon 990s, Exhibit "40"].

Additionally, ABLE continues to promote Defendant Narconon Arrowhead using the false credentials of Defendant Narconon International's President, Defendant Clark Carr, and Defendant Gary Smith.   As recently as August 27, 2014, ABLE published Narconon Drug Education Presentations: *Science References & Background*, which includes a letter signed Clark Carr, C.C.D.C. and Gary Smith, C.C.D.C. [See Ex. 27 at ¶ 49; Excerpts from ABLE's Narconon Drug Education Presentations, Exhibit "49".   The interconnectivity amongst the Defendants is

astonishing[3].   ABLE cannot escape the web it has so carefully spun.   Despite ABLE's Declaration to the contrary, ABLE's involvement with Narconon Arrowhead includes much more than a licensor/sublicensee relationship.

**2)        ABLE's Actual Operational Control of Narconon Entities**

The incestuous and interdependent nature of this network is further exhibited through ABLE's exercise of *de facto* control over all Narconons around the world.   ABLE recently has been the subject of litigation in Nevada in the matter of *Geanacopulos v. Narconon Fresh Start d/b/a Rainbow Canyon Retreat, et al.*, 2014 WL 4079509 (D. Nevada) in which it has similarly filed a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(2).

Nevada and the Ninth Circuit's standards concerning jurisdiction are nearly identical to Oklahoma and the Tenth Circuit.   On August 18, 2014, the District Court in *Geanacopulos* held that ABLE was subject to litigation in Nevada. [See *Geanacopulos* Order, Exhibit "37"].   The court specifically found that ABLE, Narconon International and Defendant Narconon Fresh Start were connected through the licensing of the Narconon trademarks.   The plaintiff provided evidence of pamphlets showing ABLE's control over Narconon Fresh Start.   These two facts were sufficient to preclude dismissal.   Separately, the Court found that Narconon Fresh Start was merely an instrumentality of ABLE and but for Narconon Fresh Start, ABLE would be required to undertake the activities alleged in the Complaint.   The court found that ABLE's activities and connections with Narconon Fresh Start constituted purposeful availment and found jurisdiction

---

[3] It is necessary to point out Defendants' apparent strategy in the filing of all Defendants' numerous Motions to Dismiss.   Certain motions are filed by only a single Defendant, while others are filed by groupings of Defendants. Yet, the groupings appear random with no real connection between the Defendants within the particular groups.   For example, Defendants Robert Hernandez, his wife Defendant Daphna Hernandez, and Defendant FONI (founded by Mr. and Mrs. Hernandez) filed three separate motions, yet grouped themselves with other seemingly unrelated Defendants. Such convoluted filings lead one to believe Defendants are attempting to hide or minimize the incestuous nature of the Narconon Network.

was proper.  Accordingly, the same analysis can be used here to find ABLE purposefully availed itself of the jurisdiction in Oklahoma.

Plaintiffs have provided to the Court a series of exhibits directly rebutting Ms. Qureshi's self-serving Declaration attached to ABLE's motion.  Most striking are the statements of non-party witness Eric Tenorio.   In July 2014, Mr. Tenorio provided an Affidavit in the *Geanacopulos* matter, which set forth details concerning ABLE's actual control over the Narconon Network.  Mr. Tenorio was the former Executive Director of Freedom Center. [See the Affidavit of Eric Tenorio, Exhibit "31"].

During his twelve years working with Narconon in various roles, Mr. Tenorio personally observed how Narconon International and ABLE micromanaged the individual Narconon centers, such as Freedom Center. [Ex. 31 at ¶ 4].   Specifically, Narconon and ABLE must approve all websites an individual Narconon center uses before the site can "go live" on the Internet or before a site's content is changed. [Ex. 31 at ¶ 8].  Each individual Narconon Center is required to maintain a "Building Fund," which at one point was drained by ABLE in order to fund a book campaign known as "The Basics" devised by the Church of Scientology International. [Ex. 31 at ¶ 16]. Ultimately, ABLE maintains absolute authority over every Narconon Center, which includes the final say on all decisions related to the individual center, such as advertising. [Ex. 31 at ¶ 17].

Although not contained in the Affidavit completed by Mr. Tenorio for the *Geanacopulos* matter, he also has personal knowledge of additional details in support of Plaintiffs' claims. Based upon Mr. Tenorio's roles with various Narconon centers, he has personal knowledge concerning the interconnectivity of the Narconon Network and its ties to the Church of Scientology. He witnessed the Narconon Network's purposeful misuse of Plaintiffs' marks,

logos and certifications in order to entice vulnerable people into the Narconon Network and the Church of Scientology. Over two years ago, Mr. Tenorio warned Defendants Gary Smith, Michael Gosselin, and Kathy Gosselin regarding the risks in falsifying credentials and misusing Plaintiffs' logos. Additionally, Mr. Tenorio attempted to dissuade Brian Kuehne (Executive Director of Narconon Freedom Center) and Phil Hart (Trustee and Executive Director of Defendant Narconon International) from continuing to falsify credentials from NAFC and ACCFC.

Mr. Tenorio's statements show the continued control exercised by the lead organizations Defendant Narconon International and Defendant ABLE, which are under the specific control of Defendant RTC.  ABLE's dominance over the individual Narconon centers, like Narconon Arrowhead, is exhibited internationally.  For example, in the United Kingdom, ABLE produced an ad concerning the hiring of Narconon executives and staff. [See the ABLE Ad Hiring Scientologists for Narconon UK, Exhibit "50"].    The posting appears somewhat neutral; however, a closer reading shows that the advertisement is specifically seeking Scientologists. The position seeks "dedicated, on-purpose staff with *high confront*." [Ex. 50].  "Confronting" is a Training Routine ("TR") from Scientology that trains individuals to stare at one another without flinching. [See the Description of Confronting in Conjunction with Narconon Arrowhead, Exhibit "51"].  It is listed as a Scientology Course on a website owned by the Church of Scientology International. [See www.scientologycourses.org page, Exhibit "52"]. Thus, it is evident that ABLE is seeking more Scientologists to be employed at Narconon.

Additionally, numerous documents exhibit the specific role played by ABLE in the dissemination of L. Ron Hubbard's technology for the promotion of the Church of Scientology International. RTC's President, Defendant David Miscavige created the Authorization,

Verification and Correction ("AVC") department in RTC and mandated that no strategy, project, program or order of any kind could leave the Church of Scientology without going through the AVC. [Ex. 4 at ¶ 13]. Through the AVC unit within RTC, Mr. Miscavige directly oversees all strategies, projects, programs or orders of any kind associated with the Church of Scientology. [Ex. 2 at ¶ 6]. Mr. Miscavige's oversight and control within the AVC includes the requirement of RTC authorization and approval of all materials and promotional items prior to use by the Narconon Network. [Ex. 2 at ¶ 7].

AVC control is exemplified through the directives circulated to the Narconon Network. [Ex. 1 at ¶¶ 24, Exhibit 20, SOCO International Directive]. The SOCO[4] International Directive describes the sole reason for Narconon is to sell L. Ron Hubbard's technologies to society. [Ex. 1 at ¶ 23; Ex. 20]. The sale of L. Ron Hubbard's technologies to society occurs through corporations like ABLE. According to the Church of Scientology's International Management Executive Committee ("IMEC"), "[t]o make a Scientology community, one must have all the many different field activities going forward so LRH tech is applied in all aspects of life." [Clear Expansion Committee IMEC ED 2025, Exhibit "53"]. The IMEC sets forth the purpose of the orgs, which is "[t]he coordination necessary to expand all Scientology activities in your area--**all under the auspices of the org**-." [Ex. 53 (emphasis added)]. The IMEC propounds the ultimate mission statement concerning expansion:

> TO UNITE AND COORDINATE ALL SCIENTOLOGISTS, SCIENTOLOGY ORGANIZATIONS AND GROUPS AND SOCIAL BETTERMENT ACTIVITIES IN AN AREA TOWARD MAKING LRH TECHNOLOGY WIDELY KNOWN AND BROADLY APPLIED WITH TIIE ULTIMATE GOAL OF SALVAGING ALL BEINGS. CLEARING TIIE ENTIRE COMMUNITY AND BUILDING A SCIENTOLOGY WORLD.

---

[4] SOCO International was ABLE's predecessor. [Ex. 1 at ¶ 23].

[Ex. 53, (capitals in original)].   The International Management sector of the Church of Scientology International includes ABLE, whose role is to provide the strategies and tactical plans through expansion of the social reform activities that use L. Ron Hubbard's technologies. [Ex. 1 at ¶ 18; Exhibit 16 at p. 23].   The goal is to make Narconon as big as the rest of Scientology. [Ex. 16 at p. 30].

     **3)**      **ABLE's Role in the Overarching Goals to Promote COSI**

In her Declaration, Ms. Qureshi provides half-truths concerning ABLE's connection to Narconon Arrowhead, ultimately claiming the only oversight involves the use of the licenses. [Dkt. 292-1 at ¶¶ 5 and 6].   The whole truth has been provided through the Church of Scientology's International Management Bulletin No. 56 [Exhibit 54], which states in relevant part:

- The only reason orgs exist is TO SELL AND DELIVER MATERIALS AND SERVICE TO THE PUBLIC AND GET IN PUBLIC TO SELL AND DELIVER TO. THE OBJECT IS TOTALLY FREED CUSTOMERS ! " (LRH**)

- So the only reason the Church was founded, the only reason every Scientology org, mission, group and unit exists is to either directly sell and deliver on-policy, in-tech Dianetics and Scientology services, or help make this happen.

- [A]ll are aimed at getting Scientology materials and services delivered to public.

- [T]he Business of Orgs is…SELLING AND DELIVERING DIANETICS AND SCIENTOLOGY MATERIAL AND SERVICES TO PUBLIC.

- That's where the HCO Area Secretary comes in. His HCO recruits, posts and hats. And the only reason it does that is so the org can sell and deliver Dianetics and Scientology material and services to public. THERE ARE NO OTHER REASONS. EVERY POST IN EVERY ORG EXISTS TO KEEP THE ORG THERE AND ACCOMPLISH THIS.

- More and more officials around the world <u>are recognizing our drug rehabilitation programs</u>. (emphasis added).

- Anyone found not supporting or doing this -- well, I don't even want to talk about that!

- My message to you is: DISCARD ANYTHING THAT IS NOT HELPING YOU AND YOUR ORG SELL AND DELIVER MATERIAL AND SERVICES TO PUBLIC AND GET IN PUBLIC TO SELL AND DELIVER TO. This is why your org is there.

- I don't care how many rules you break if they're broken to give unselfish service to one another and the public. We live for service not for rules.

In addition to the pertinent points listed above, the entire bulletin was "Authorized by AVC INTERNATIONAL for the CHURCH OF SCIENTOLOGY INTERNATIONAL." [Ex. 54].

The controlling Scientology entities (Church of Scientology International, RTC, ABLE, Narconon International) ordain the common scheme in which the remaining Defendants participate to promote the Narconon Network and ultimately entice individuals into the Church of Scientology. [Dkt. 3 at ¶¶ 115, 119, 246, 253-254, and 256]. The grasp of the scheme extends through the United States and Canada, with the substantial portions of the conspiracy taking place in Oklahoma at Narconon's flagship facility. [See Plaintiffs' Response to RTC's Motion to Dismiss, Dkt. 261].

Mike Rinder's Declaration submitted in support of Rathbun v. Miscavige lays out how in reality there is NO separation between the Scientology corporations, and how the corporate structures are deliberately set up as separate entities to avoid judgment. [Ex. 3 at ¶¶ 14, 15, 21]. The Affidavit of Marty Rathbun discusses in depth how David Miscavige set up the Authorization, Verification and Correction (AVC) department within RTC for the purposes of controlling COSI, such that no decision or action could be executed without being approved by the AVC department. However, David Miscavige changed the procedures in order that he was the only authority over all Scientology organizations' decisions. [Ex. 4 at ¶¶ 13, 14].

In sum, Narconon International attempts to make distinctions about its role and distinguish itself from the other Defendants in an effort to detract from the reality of the

situation.  The intertwining and interconnectedness of the Defendants is convoluted and intricate, but a common thread runs through each: Narconon and the Church of Scientology.  Plaintiffs sufficiently alleged in the Complaint and support with evidence herein, in contravention of Defendant Rubina Qureshi's Declaration that ABLE is not involved in the infringement and civil conspiracy stemming from the core Narconon location in Oklahoma, as well as exerts direct control over all members of the Narconon Network.  Accordingly, Defendant ABLE's Motion to Dismiss should be denied.

### *ARGUMENTS AND AUTHORITIES*

**I.    STANDARD FOR MOTION TO DISMISS UNDER 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

When faced with a motion to dismiss based upon FED.R.CIV.P. Rule 12(b)(2), "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff's burden to make the prima facie showing in the early stages of litigation is light. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (internal quotations omitted).  "[O]n a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappu*, 710 F.2d 1449, 1454 (10th Cir. 1983), quoting *Wyatt v. Kaplan*, 686 F.2d 276, 282 n. 13 (5th Cir. 1982). If contradicted by affidavits, the Plaintiff bears the burden of responding with evidence to show a dispute. *Id*.  Any factual disputes will be resolved in favor of the plaintiff.  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).   Once the prima facie showing is made by the plaintiff, the burden shifts onto the defendant to convincingly demonstrate the exercise of personal

jurisdiction would offend the traditional notions of fair play and substantial injustice. *OMI Holdings*, 149 F.3d at 1091.

In order for the court to exercise personal jurisdiction over a defendant, the defendant must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend the traditional notions of fair play and substantial justice. *Shrader*, 633 F.3d at 1235, citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008). The contacts may either be general, meaning for any lawsuit, or specific, meaning for a lawsuit arising out of particular forum-related activities. *Id.* General jurisdiction is based on the "continuous and systematic" contacts with the forum state. *Id.* By contrast, specific jurisdiction requires a showing that 1) the out-of-state defendant purposefully directed his activities at residents of the forum state, and 2) that plaintiff's injuries arise out of the defendant's forum-related activities. *Id.* Once all conditions are met, the court then determines whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Id*. at 1240. This requires a determination that the exercise of jurisdiction is reasonable in the circumstances. *Intercon*, 205 F.3d at 1247. The court reviews the following factors in deciding whether the exercise of jurisdiction is reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1249. The interplay between the minimum contacts analysis and the determination of reasonableness of the exercise of jurisdiction by the Court evokes a sliding scale analysis, e.g. "an exceptionally strong showing of reasonableness may serve to fortify a borderline showing of

[minimum contacts]." *OMI Holdings*, 149 F.3d at 1092, quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

## II.    PERSONAL JURISDICTION EXISTS

### a.   General Jurisdiction Exists

As set forth in great detail in the Relevant Facts section above, ABLE's general contacts with Oklahoma involve the micromanaged control over Defendant Narconon Arrowhead, notably including the website of Narconon Oklahoma.  Additionally, there is significant overlap and interconnectivity between and amongst the key individuals controlling ABLE, Narconon International and Narconon Oklahoma.  Each of these factors exemplifies a series of systematic and continuous contacts with this forum for the purpose of establishing general jurisdiction.

### b.   Specific Jurisdiction Exists

ABLE purposefully directed its activities towards Oklahoma and did so in a manner that caused Plaintiffs' damages through their direct infringement, along with its leadership of, and participation in, the infringement and civil conspiracy stemming from Oklahoma. *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) articulates the Tenth Circuit's position on passive websites for the purpose of establishing jurisdiction. ("The maintenance of a web site does not in and of itself subject the owner operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.").  As *Shrader* noted, its restrictive approach requires "the forum state itself must be the focal point of the tort."  *Id*. at 1244, quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1074 n. 9 (10th Cir. 2008).  ABLE ignores the fact that Oklahoma is the focal point of the infringement and civil conspiracy, which is more than sufficient to trigger jurisdiction – even under the *Shrader* analysis.

Additionally, personal jurisdiction is triggered when the defendant is liable for contributory infringement. The Supreme Court has recognized that contributory liability under the Lanham Act exists beyond the party who actually misused the trademark. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853-854, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). Even if the defendant does not actually use the mark, it can be responsible for infringement if it 1) induces another to infringe or 2) continues to supply its product to someone it knows or has reason to know is infringing. *Id.*   Contributory liability for infringement is predicated upon direct infringement by another party. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013).

Additionally, contributory liability does not distinguish between infringement pursuant to § 32 of the Lanham Act, § 43 of the Lanham Act or common law, which contain nearly identical elements except that registration of the mark provides prima facie evidence of both the mark's validity and exclusivity under § 32. *See Id.* at 1238 and 1240; *See also Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2009). ABLE maintains such specific and detailed control over the Narconon Treatment Centers, the circumstances strongly indicate ABLE's knowledge and direction concerning the infringement upon Plaintiffs' marks.

The United States District Court for the Central District of California, in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F.Supp.2d 1073 (C.D.Cal. 2003) [See Exhibit "35"], found specific jurisdiction where the Defendant was involved in contributory infringement connected to the forum state.  The Supreme Court, in *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486-87, 79 L.Ed.2d 804 (1984), recognized that purposeful availment is shown where the *effects* of a Defendants' conduct is felt in the forum state. *Grokster* is on point and was

cited with approval in the U.S. District Court for the Southern District of New York. *See also*

*Motown Record Co., L.P. v. iMesh.Com, Inc.*, 2004 WL 503720 (S.D.N.Y. March 12,

2004)(citing its approval of *Grokster*). [See Ex. 36].

Based on ABLE's contributory involvement in the infringement of its Co-Defendants and

the effects in Oklahoma, specific jurisdiction exists.  The implementation and maintenance of the

marketing plan to wrongfully use Plaintiffs' marks to bolster the Narconon Network, as well as

the evidence of the direct control exercised by ABLE, shows ABLE's knowledge and

willingness to contribute to the infringing activities of its Co-Defendants.

Moreover, the overt activities of a co-conspirator within the forum may subject the other

co-conspirator to the jurisdiction of the form.  *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th

Cir. 2013), citing *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007).  The main

requirement to trigger jurisdiction through conspiracy is that ***at least one*** of the conspirators has

pursued the conspiracy within the forum state. *Id*. (emphasis added). ABLE only cites to a

portion of *Melea* and attempts to use that narrow portion to set forth a bright line rule that does

not exist.   Moreover, ABLE ignores the fact that the Tenth Circuit acknowledges the

circumstance where "a co-conspirator's presence within the forum might reasonably create the

'minimum contacts' with the forum necessary to exercise jurisdiction over another co-

conspirator if the conspiracy is directed towards the forum, ***or substantial steps in furtherance***

***of the conspiracy*** are taken in the forum." *Melea*, 511 F.3d at 1070 (emphasis added).

In this case (and as established herein), the largest grouping of Defendants is located in

this forum, including the main players in the civil conspiracy: Defendants Narconon Arrowhead,

The Pita Group, Inc., Gary Smith, Derry Hallmark, Kent McGregor. [Complaint at ¶¶ 31, 32, 41,

86, 113, 116, 127-129, 137-139, 142-144, 161-163, 169-171, 177, 188, 198,199, 205, 206].

McGregor personally offered the falsified C.C.D.C. certifications, claimed a relationship to Plaintiffs that did not exist, and owns and operates numerous websites posting the falsified credentials of other Defendants. [Complaint at ¶¶ 159-163, 170, and 198-199].

As articulated in the Statement of Relevant Facts section above, it is precisely the wrongful and damaging activities committed by the Oklahoma Defendants against Plaintiffs in which ABLE participated and continues to participate. The crux of ABLE's specific harmful activities and the connection to the Defendants located in this forum are more than sufficient to establish specific jurisdiction in the Tenth Circuit.

### c.   The Exercise of Jurisdiction is Reasonable under the Circumstances

An analysis of the five factors weigh heavily in favor of finding reasonableness in the exercise of personal jurisdiction against ABLE in this case.  Particularly:

**1) Burden on the Defendant.**  Although filed in Oklahoma, the ease of electronic filing in Federal Court makes this forum accessible from any location with Internet.  As to Narconon International in particular, Narconon International did not appear to have any challenges finding local counsel.  Specifically, the firm who represents ABLE represents four (4) defendants (at last count, since defendants continue to be served and retaining counsel on an ongoing basis) and are already familiar with the facts of this case.  This familiarity and ability to consolidate motions, such as this Motion, greatly reduces the costs and alleged burden to the Defendants to this case.  Further, the allegations in this Complaint involve wrongful acts across the United States, Canada, and the United Kingdom.  Since the majority of the Defendants are located in the United States, the largest number of individual defendants are located in Oklahoma, and the hub of the civil conspiracy is in the Eastern District of Oklahoma, the Eastern District of Oklahoma is the most centrally located forum.

Plaintiffs were not required to devise creative and imaginative arguments to justify leaving their home state of Indiana and choosing to file the instant case in the Eastern District of Oklahoma; they merely had to follow the trail of breadcrumbs left by RTC, COSI, Narconon International, governed by autocratic mastermind David Miscavige and utilizing the hands and feet of the other Defendants. The trail led Plaintiffs straight to the epicenter at Narconon Arrowhead in the Eastern District of Oklahoma.   Thus, the first factor weighs in favor of exercising jurisdiction.

**2) Forum state's interest in resolving the dispute.**   This State houses the majority of the wrongful activities set forth in Plaintiffs' Complaint with the largest number of Defendants being citizens of this State.   Additionally, Narconon Arrowhead is considered by the Church of Scientology to be the hub of the Narconon Network.   Oklahoma has an interest in adjudicating a dispute like this, which involves many non-residents because the conduct affects Oklahoma residents. *See OMI Holdings*, *supra*, 149 F.3d at 1096.   Oklahoma residents are targets of Defendants' campaign to grow Narconon Arrowhead, the Narconon Network and consequently the Church of Scientology.   Accordingly, factor 2 weighs in favor of exercising jurisdiction.

**3) Plaintiffs' interest in receiving convenient and effective relief.** Plaintiffs have recently uncovered this enormous conspiracy involving at least eighty-two (82) separate defendants.  If Plaintiffs were required to file a separate lawsuit for each Defendant, Plaintiffs' rights would be significantly hindered.  Plaintiffs, including the Non-Profit NAFC, do not have the expansive and unlimited resources to pursue litigation on such a large scale. Instead, the burden would be so overwhelming as to prevent Plaintiffs from being to pursue their claims at all.  Specifically, in relation to both the trademark infringement and the civil conspiracy claims, there would be a large amount of duplicative work necessary with regard to discovery, especially

with the depositions of multiple defendants whose conduct touches multiple jurisdictions. Plaintiffs' interest far outweighs Defendants' interest in this matter.  Therefore, the 3rd factor weighs in favor of exercising jurisdiction.

**4) Interstate judicial system's interest in obtaining the most efficient resolution of controversies –** The key inquiries for this portion of the analysis are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, *supra*, 149 F.3d at 1097.  Each of these inquiries, mostly discussed in paragraphs 1-3 above, favors the Court exercising jurisdiction in this case.  A majority of the material witnesses are located in Oklahoma, the epicenter of the underlying wrongs occurred in Oklahoma, and substantial steps in furtherance of the conspiracy occurred in Oklahoma. Further, as discussed in paragraph 3 above, multiple depositions of the same defendants hardly constitutes the most efficient resolution of controversies. Finally, the law governing is federal, and piecemeal litigation would most certainly result if Plaintiffs were forced to dismiss certain Defendants.   Accordingly, the fourth factor weighs in favor of exercising jurisdiction.

**5) Shared interest of the several states in further fundamental substantive social policies –** Public policy considerations are endemic to this case.  People put their lives as well as the lives of their children, spouses, parents, etc., into the hands of professionals working in the drug rehabilitation field.  The hijacking of the Plaintiffs' marks and accreditation creates a false aura of expertise where none exists, and the public, as well as Plaintiffs, are damaged as a result. While some Defendants argue that the violations were unintentional or focus on the relative size of the violation in the scheme, it only underscores the importance of this Court exercising jurisdiction to maintain a single lawsuit rather than burdening the innocent Plaintiffs with the

necessity of filing lawsuits in numerous states.  Litigating this case together in Oklahoma is analogous to having all the pieces of a jigsaw puzzle in one place.  Permitting Defendants to scatter the pieces of the jigsaw puzzle throughout various jurisdictions across the country will prevent the entire picture, the civil conspiracy, from being exposed and uncovered.

Further, because this lawsuit is premised upon federal law, several states share an interest with Oklahoma and the policies embodied by the federal law.  As for the international Defendants, they have all willingly participated in the growth of the Narconon Network, which is a United States network.  The foreign citizens chose to conduct business with Narconon and the laws governing this dispute are in the United States.  For these reasons, the fifth factor weighs in favor of exercising jurisdiction.

### III.   PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES CLAIMS AGAINST THE MOVING DEFENDANTS

Due to Narconon International's incorporation of the Motion to Dismiss and Brief in Support of Defendants the Pita Group, Inc., et al., Plaintiffs hereby incorporate by reference in their entirety the Response to the Motion to Dismiss of the Pita Group, Inc., et al. as well as all other Responses to Defendants Motions to Dismiss that have been filed in this matter.

### IV.   ALTERNATIVE REQUEST FOR LEAVE TO AMEND

Assuming *arguendo* the Court finds Plaintiffs failed to allege sufficient facts under FED.R.CIV.P. Rule 12(b)(6), Plaintiffs hereby request leave to amend.  Pursuant to FED.R.CIV.P. Rule 15(a), leave to amend shall be freely given when justice so requires.  The liberal policy allowing for amendments reflects the general policy in the American system that claims should be heard on their merits.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Unless there is an apparent or declared reason, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party or futility of the amendment, the court's refusal to allow an amendment is an abuse of discretion. *Id.*

This matter remains in its infancy. Only two Defendants have answered the Complaint. Approximately half of the Defendants have filed responsive motions, many of which have not yet completed their briefing cycle and none upon which the Court has ruled.  Plaintiffs have not delayed in this request or made any previous applications to amend.   Additionally, as demonstrated to the Court in the evidence submitted concerning personal jurisdiction, there are more than sufficient facts alleged concerning the Defendants' roles in the conspiracy, meaning the amendment would not be futile.  Because the request is timely, made in good faith, without prejudice to the Defendants, and is not futile, Plaintiffs respectfully request the Court grant Plaintiffs leave to amend if necessary.

## V.     PLAINTIFFS OBJECT TO THE REQUEST FOR JUDICIAL NOTICE

ABLE attached to their Motion to Dismiss a Request for Judicial Notice concerning the 2014 posting on the California Department of Health Care Services website about Counselor Certification Organizations.   Notwithstanding the failure to separate the motion as its own pleading in violation of LCvR 7.1(c), Narconon International's Request for Judicial Notice should be disregarded because it does not fall within the category of documents that would be appropriate for the Court's consideration in its Motion to Dismiss.

First, it comes in the middle of a paragraph as a non sequitur between discussions about a C.C.D.C. reference in California and damages to Plaintiffs in Oklahoma.  ABLE does not state the purpose of requiring judicial notice of the 2014 certification rolls in California or how it supports Defendant's argument. Additionally, "documents [receiving judicial notice] may only

be considered to show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

Thus, it is unclear as to why Defendants are seeking to use the documents, other than to challenge the merits of the value of Plaintiffs' certification. It appears Defendants seek the court take notice of the contents of the documents concerning Plaintiffs' approval in California in 2014. While Plaintiffs may, in fact, utilize such information in support of Plaintiffs' damages allegations[5] [Dkt. 3 at ¶ 258], that issue involves the merits of this dispute and does not support or otherwise trigger the analysis for a motion to dismiss under FED.R.CIV.P. Rules 12(b)(2) and (b)(6). Accordingly, Plaintiffs respectfully request the Court deny Defendant ABLE's Request for Judicial Notice at this time.

## CONCLUSION

As set forth herein, Plaintiffs have presented more than sufficient facts to make a prima facie showing of minimum contacts in the State of Oklahoma to establish personal jurisdiction over ABLE. Under the circumstances of this case, all of the relevant factors weigh in favor of the reasonableness of this Court exercising personal jurisdiction over Defendant ABLE. Additionally, Plaintiffs have set forth a series of well-pleaded facts sufficient to set forth Plaintiffs' claims against all Defendants. Alternatively, Plaintiffs request leave to amend the Complaint if necessary.

WHEREFORE, Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors respectfully pray the Court deny Defendant Association for Better Living

---

[5] In his Declaration, Defendant Clark Carr admits to refusing to renew his certification as a consequence of this lack of State approval. [Dkt. 294-1 at ¶ 6].

and Education's Motion to Dismiss and for such further relief as the Court deems just and proper.

Respectfully submitted,

**KEESLING LAW GROUP, PLLC**

*s/ David R. Keesling*
David R. Keesling, OBA # 17881
Heidi L. Shadid, OBA # 22897
Sloane Ryan Lile, OBA # 21342
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, OK 74103
(918) 924-5101 Phone
(918) 512-4888 Fax
David@KLGattorneys.com
Heidi@KLGattorneys.com
Sloane@KLGattorneys.com

*Attorneys for Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a ACCFC of Certified Forensic Counselors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 2, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Charles D. Neal
Donald M. Bingham
David L. Bryant
Wm. Gregory James
M. David Riggs
John H. Tucker
Richard P. Hix
David E. Keglovits
John J. Carwile
Amelia A. Fogleman
Colin H. Tucker
Stacie L. Hixon
Rachel D. Parrilli
Kerry R. Lewis
Denelda L. Richardson
Alison A. Verret
Todd Nelson
Robert Nelon
Nathan Haskins
Tom O'Leary

_s/ David R. Keesling,_
*Attorney for Plaintiffs*