# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. NATIONAL ASSOCIATION OF FORENSIC COUNSELORS, INC., a Nevada Non-Profit Corporation, and<br>2. AMERICAN ACADEMY OF CERTIFIED FORENSIC COUNSELORS, INC., d/b/a AMERICAN COLLEGE OF CERTIFIED FORENSIC COUNSELORS, a Nevada For-Profit Corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>1. NARCONON INTERNATIONAL, a California Non-Profit Corporation, et al.<br><br>    Defendants. | Case No. 14-cv-00187-RAW |

## PLAINTIFFS' RESPONSE AND INCORPORATED BRIEF IN OPPOSITION TO DEFENDANT CHURCH OF SCIENTOLOGY'S MOTION TO DISMISS

Respectfully submitted,

**KEESLING LAW GROUP, PLLC**

*s/ David R. Keesling*
David R. Keesling, OBA # 17881
Heidi L. Shadid, OBA # 22897
Sloane Ryan Lile, OBA # 21342
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, OK 74103
(918) 924-5101 Phone
(918) 512-4888 Fax
David@KLGattorneys.com
Heidi@KLGattorneys.com
Sloane@KLGattorneys.com

*Attorneys for Plaintiffs*

COME NOW, Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") and Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC") (collectively "Plaintiffs"), by and through their counsel of record Keesling Law Group, PLLC, and pursuant to FED.R.CIV.P. Rule 12(b)(2) hereby submit Plaintiffs' Response and Incorporated Brief in Opposition to Defendant Church of Scientology International's Motion to Dismiss. In support thereof, Plaintiffs state as follows:

### *INTRODUCTION*

This case is about Defendant Church of Scientology International ("COSI") being the ultimate mastermind behind the brazen theft of Plaintiffs' logos, trademarks, certifications, and established business reputation in order to bait vulnerable victims into the Scientology religion. Plaintiffs operate a certification board for forensic counselors. In order to operate the certification board, Plaintiffs have established a series of standards, skills, training and competencies required for professionals working with criminal offenders in addictions[1] to enhance the delivery of safe and effective treatment. This lawsuit involves the misappropriation and misuse of Plaintiffs' logos, trademarks, certifications, and established business reputation by Defendants for the purposes of marketing Narconon programs for profits and ultimately promoting the Church of Scientology, at the expense of Plaintiffs. Defendant Church of Scientology International was added to the Complaint based upon its role as the ultimate beneficiary of the scheme to utilize Plaintiffs' logos, trademarks, certifications, and established business reputation to attract individuals into the Narconon Network and, consequently, the Church of Scientology.

---

[1] The addictions certifications are the only relevant certifications for the purposes of this case. However, Plaintiffs also promote competency and training in the areas of criminal justice, mental health and corrections.

## STATEMENT OF RELEVANT FACTS

Based on the overarching breadth of the infringement and conspiracy, and to avoid unnecessary duplication, Plaintiffs incorporate by reference their Response to the Motion to Dismiss filed by Defendant Religious Technology Center ("RTC"), as well as all concurrently and previously filed Responses to Motions to Dismiss. Specifically, Plaintiffs incorporate the paragraphs setting forth the common scheme run by RTC and the exhibits 1 – 26[2] referenced therein. *For the clarity of the Record and for judicial economy, Plaintiffs are utilizing a continuous numbering scheme and will be separately filing an appendix with the exhibits to all concurrently filed Responses to the Motions to Dismiss rather than filing the exhibits piecemeal and duplicative with the individual Responses. Additionally, because Plaintiffs had also filed a Response to the Motion to Dismiss of Defendant David Lee with its own exhibits beginning at No. 1, Plaintiffs will list all exhibits from the David Lee Response as "DLEx."*

As alleged in the Complaint, the Narconon Network (drug rehab facilities, treatment centers, referral and intervention entities and individuals) utilize the L. Ron Hubbard (or "LRH") technology[3] in drug treatment as a fundraising and recruitment program for COSI. [Complaint (Dkt. 3) at ¶111, 254-255]. This allegation is supported by numerous sources. The Affidavit of Eric Tenorio, former Executive Director of Narconon Freedom Center, sets out how Narconon International and ABLE (a subsidiary entity under COSI) control all aspects of Narconon facilities – hiring, disciplinary actions against employees, administration of the LRH technology,

---

[2] Plaintiffs will provide the Court with a courtesy copy of all continuously numbered exhibits for the Court's convenience.

[3] When discussing the L. Ron Hubbard "technology," the Complaint and the filings in this case are referring to L. Ron Hubbard's Dianetics, which are the Hubbard's proclaimed methods for overcoming nightmares, unreasonable fears, upsets, insecurities and psychosomatic illnesses to reach the Scientology's state of "Clear." See www.scientology.org/faq/background-and-basic-principles/what-is-dianetics.html.

website approval, promotional materials approval, monitoring of each facilities' statistics, and financials. [See Affidavit of Eric Tenorio, Exhibit "31"]. Numerous COSI pamphlets and other literature speak of Narconon as a project owned, controlled, and/or belonging to COSI and ABLE, despite formal entity documents to the contrary. [See Various COSI documents referencing Narconon, Exhibit "57"].

According to Allan Cartwright's own admission, COSI is dedicated to the advancement and dissemination of the Scientology religion. [Dkt. 285-1 at ¶2]. Yet COSI denies that it utilizes Narconon to drive new members into Scientology. Despite COSI's current statements, the documentary evidence is to the contrary. In 1996 documents regarding the Clear Expansion Committee, which deals with "increasing the body volume" of Scientology, the directive speaks of creating a Scientology community by applying LRH tech in all areas of life, including through Narconon. Specifically:

> The purpose of the Clear Expansion Committee is: TO UNITE AND COORDINATE ALL SCIENTOLOGISTS, SCIENTOLOGY ORGANIZATIONS AND GROUPS AND SOCIAL BETTERMENT ACTIVITIES IN AN AREA TOWARD MAKING LRH TECHNOLOGY WIDELY KNOWN AND BROADLY APPLIED WITH THE ULTIMATE GOAL OF SALVAGING ALL BEINGS, CLEARING THE ENTIRE COMMUNITY AND BUILDING A SCIENTOLOGY WORLD.

[See IMEC ED 2025 Clear Expansion Committee, Exhibit "53" (all caps in original)]. Further, L. Ron Hubbard and COSI have been proclaiming for decades that their programs are intended to drive people into Scientology. [See Heber Jentsch Information Letter, Exhibit "58"]. These documents make clear that its branches, such as Narconon, are included in the mandate to utilize LRH teachings to build "a Scientology world," thus connecting COSI with the Narconon Network defendants and their scheme to promote Narconon by bolstering its credibility via the

misuse and misappropriation of Plaintiffs' logos, trademarks, certifications, and established business reputation [*Id.,* Dkt. 3 at ¶ 114, 115, 253].

COSI's involvement in the civil conspiracy is complex, with many "bricks" making up the wall. The Affidavit of Eric Tenorio, former Executive Director of Narconon Freedom Center, Paragraphs 9, 10 and 11 directly support that Narconon purposefully and knowingly misused and falsified Plaintiffs' logos and credentials. [Ex. 31 at ¶¶ 9, 10, 11]. The affidavit of Mike Rinder, former Board Member of COSI, in Paragraphs 10, 11, 12, 17, 18, 19, 21, and 23 chronicles David Miscavige's involvement and control over RTC, COSI, and Narconon, and the importance of the promotion and success of Narconon, especially Narconon Arrowhead. [Ex. 2 at ¶¶ 10, 11, 12, 17, 18, 19, 21, and 23]. Mike Rinder's Declaration submitted in support of Rathbun v. Miscavige lays out how there is **no** separation between the Scientology corporations, and how the corporate structures are deliberately set up to appear as separate entities to avoid judgment. [Ex. 3 at ¶¶ 14, 15, 21]. The Affidavit of Marty Rathbun discusses in depth how David Miscavige set up the Authorization, Verification and Correction (AVC) department within RTC for the purposes of controlling COSI, such that no decision or action could be executed without being approved by the AVC department. However, David Miscavige then changed the procedures such that he was the only authority over **all** Scientology organizations' decisions. [Exh. 4 at ¶¶ 13, 14].

According to Defendant Church of Scientology International's own website, Narconon Arrowhead (which is located in Canadian, Oklahoma [Complaint at ¶ 4]), is the epicenter of the Narconon Network. [Exh. 1, Affidavit of Karla Taylor at ¶ 4; Ex. 7]. In 2004, the Church of Scientology International produced a DVD entitled "*This is Scientology; An Overview of the World's Fastest Growing Religion,*" in which David Miscavige stated, "That's why **we** formed

the Narconon Network… in the aftermath of 9/11, the church sponsored the establishment of a new international Narconon center in Arrowhead, Oklahoma, the largest residential rehab center in the country…" [Ex. 1 at ¶7(b)].  The Church of Scientology International publicly takes credit for its Oklahoma-based activities, but when the time comes to take responsibility for its actions, the Church of Scientology International conveniently disavows all contacts with Oklahoma. Such representations are disingenuous and should not be given credence by this Court.  Further, for purposes of establishing jurisdiction, all factual disputes must be resolved in Plaintiffs' favor. *Shrader v. Bittinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

***ARGUMENTS AND AUTHORITIES***

I.    **STANDARD FOR MOTION TO DISMISS UNDER 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

When faced with a motion to dismiss based upon FED.R.CIV.P. Rule 12(b)(2), "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff's burden to make the prima facie showing in the early stages of litigation is light. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (internal quotations omitted).  "[O]n a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent they are not contradicted by affidavits." *American Land Program, Inc. v. Bonaventura Uitgevers Maatschappu*, 710 F.2d 1449, 1454 (10th Cir. 1983), quoting *Wyatt v. Kaplan*, 686 F.2d 276, 282 n. 13 (5th Cir. 1982). If contradicted by affidavits, the Plaintiff bears the burden of responding with evidence to show a dispute. *Id*.  Any factual disputes will be resolved in favor of the plaintiff.  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).   Once the prima facie showing is made by the plaintiff, the burden shifts onto the defendant to convincingly demonstrate the exercise of personal

jurisdiction would offend the traditional notions of fair play and substantial injustice. *OMI Holdings*, 149 F.3d at 1091.

In order for the court to exercise personal jurisdiction over a defendant, the defendant must have minimum contacts with the forum state, such that having to defend a lawsuit there would not offend the traditional notions of fair play and substantial justice. *Shrader*, 633 F.3d at 1235., citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008). The contacts may either be general, meaning for any lawsuit, or specific, meaning for a lawsuit arising out of particular forum-related activities. *Id.* General jurisdiction is based on the "continuous and systematic" contacts with the forum state. *Id.* By contrast, specific jurisdiction requires a showing that 1) the out-of-state defendant purposefully directed his activities at residents of the forum state, and 2) that plaintiff's injuries arise out of the defendant's forum-related activities. *Id.* Once all conditions are met, the court then determines whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* at 1240. This requires a determination that the exercise of jurisdiction is reasonable in the circumstances. *Intercon*, 205 F.3d at 1247. The court reviews the following factors in deciding whether the exercise of jurisdiction is reasonable:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1249. The interplay between the minimum contacts analysis and the determination of reasonableness of the exercise of jurisdiction by the Court evokes a sliding scale analysis, e.g. "an exceptionally strong showing of reasonableness may serve to fortify a borderline showing of

[minimum contacts].” *OMI Holdings*, 149 F.3d at 1092, quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

## II.  GENERAL JURISDICTION EXISTS

As set forth in the Statement of Relevant Facts, RTC – through the Church of Scientology and Defendant Miscavige – maintains control of all facets of Scientology.  Mr. Miscavige micromanages all portions of Scientology programs by individually approving and supervising projects or by delegating such tasks to others.  [Ex. 4 at ¶¶ 13, 14, 15, 21].  This includes the supervision of the Narconon Network, such as policing the materials used, ensuring the proper dissemination of L. Ron Hubbard's technologies, and setting forth the requirements for Narconon to follow. [Exh. 31, Affidavit of Eric Tenorio]  Mr. Miscavige personally oversees the AVC unit within RTC to monitor all strategies, projects, programs or orders of any kind within the Narconon Network.  [Ex. 4 at ¶¶ 13, 14].  Narconon Arrowhead in Oklahoma is the hub of the Narconon Network, demonstrating that RTC and COSI maintain a direct contact with this State.  Each of these factors exemplifies a series of systematic and continuous contacts with this forum for the purpose of establishing general jurisdiction.

## III.  SPECIFIC PERSONAL JURISDICTION EXISTS

In addition, COSI ignores the extension of jurisdiction by virtue of the jurisdiction over co-conspirator Defendants.  In its Motion to Dismiss, COSI focuses its website analysis primarily on *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (“The maintenance of a web site does not in and of itself subject the owner operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.”). As *Shrader* noted, its restrictive approach requires “the forum state itself must be the focal point of the tort.”  *Id*. at 1244, quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063,

1074 n. 9 (10th Cir. 2008). COSI ignores the fact that Oklahoma is the focal point of the civil conspiracy, which is more than sufficient to trigger jurisdiction – even under the *Shrader* analysis.

Additionally, personal jurisdiction is triggered when the defendant is liable for contributory infringement. The Supreme Court has recognized that contributory liability under the Lanham Act exists beyond the party who actually misused the trademark. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853-854, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982). Even if the defendant does not actually use the mark, he can be responsible for infringement if he a) induces another to infringe or 2) if it continues to supply its product to someone it knows or has reason to know is infringing. *Id*. Contributory liability for infringement is predicated upon direct infringement by another party. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013). Additionally, contributory liability does not distinguish between infringement pursuant to § 32 of the Lanham Act, § 43 of the Lanham Act or common law, which contain nearly identical elements except that registration of the mark provides prima facie evidence of both the mark's validity and exclusivity under § 32. *See Id*. at 1238 and 1240; *See also Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2009).  Through its knowing participation in the scheme to misuse and misappropriate Plaintiffs' certifications, marks, logo, and business reputation, Defendant COSI should be held responsible for the infringing activities of all Defendants.

The United States District Court for the Central District of California, in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F.Supp.2d 1073 (C.D.Cal. 2003) [See Exhibit "35"], found specific jurisdiction where the Defendant was involved in contributory infringement

connected to the forum state. The Supreme Court, in *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486-87, 79 L.Ed.2d 804 (1984), recognized that purposeful availment is shown where the *effects* of a Defendants' conduct is felt in the forum state. The Court in *Grokster* relied upon the "effects test" in its holding that contributory infringement could provide the basis for specific jurisdiction upon a showing that contributory infringement will lie where the "defendant contributed to the infringement, i.e., knowingly and intentionally assisted, induced or caused the infringement." *Grokster*, 243 F.Supp.2d at 1089. *Grokster* sets forth a perfect analysis for specific jurisdiction as it relates to contributory infringement. Since *Grokster*'s publication date, it has not received any negative treatment on this issue. Instead, it was cited with approval in the U.S. District Court for the Southern District of New York. *See Motown Record Co., L.P. v. iMesh.Com, Inc.*, 2004 WL 503720 (S.D.N.Y. March 12, 2004). [See Ex. 36].

Based on COSI's contributory involvement in the infringement of its Co-Defendants and the effects in Oklahoma, specific jurisdiction exists. The implementation and maintenance of the marketing plan to wrongfully use Plaintiffs' marks to bolster the Narconon Network, as well as the evidence of the direct control exercised by COSI, shows Narconon International's knowledge and willingness to contribute to the infringing activities of its Co-Defendants.

Moreover, the overt activities of a co-conspirator within the forum may subject the other co-conspirator to the jurisdiction of the form. *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013), citing *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007). The main requirement to trigger jurisdiction through conspiracy is that **at least one** of the conspirators has pursued the conspiracy within the forum state. *Id*. (emphasis added).

In its brief, COSI references a number of paragraphs from the Complaint in which it brazenly states lack factual support to achieve a civil conspiracy.[4] With the facts cited in this and other Plaintiffs' Responses to Motions to Dismiss, which have been incorporated by reference, Plaintiffs have clearly met their burden in responding to a Motion to Dismiss based on lack of personal jurisdiction.

COSI misstates the law in asserting that COSI itself must have committed an overt act in furtherance of the conspiracy. Rather, the Tenth Circuit acknowledges the circumstance where "a co-conspirator's *presence* within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, *or substantial steps in furtherance of the conspiracy* are taken in the forum." *Melea*, 511 F.3d at 1070 (emphasis added).

COSI, through RTC and its autocratic mastermind David Miscavige, sponsored the creation and development of Narconon Arrowhead in Oklahoma, as its flagship location for Narconon drug treatment facilities. [Ex. 1 at ¶7(d)]. Narconon Arrowhead is the epicenter of the trademark violations suffered by the Plaintiffs. The largest grouping of Defendants are located in this forum, including the main players in the civil conspiracy: Defendants Narconon Arrowhead, The Pita Group, Inc., Gary Smith, Derry Hallmark, Kent McGregor. [Complaint at ¶¶ 31, 32, 41, 86, 113, 116, 127-129, 137-139, 142-144, 161-163, 169-171, 177, 188, 198,199, 205, 206]. McGregor personally offered the falsified C.C.D.C. certifications, claimed a relationship to Plaintiffs that did not exist, and owns and operates numerous websites posting the

---

[4] Had the proverbial right hand of the Church of Scientology known what the left hand was doing, it would have found that its assertions are patently false and have already been rebutted by documents and testimony in this as well as other lawsuits in which COSI is involved. COSI is wasting the Court's time by taking a position that is contrary to evidence submitted in this as well as other judicial proceedings.

falsified credentials of other Defendants. [Complaint at ¶¶ 159-163, 170, and 198-199]. The connection between COSI and other Defendants has been clearly established by the affidavits of Eric Tenorio, Mike Rinder and Marty Rathbun, as required under *Clark v. Tabin*, 400 F.Supp.2d 1290, 1297 (N.D.Okla. 2005). [Exhs. 2, 3, 4, 31]. The conduct of and connections between Defendants clearly constitute the requisite "overt actions" under *Clark* to establish jurisdiction over the co-conspirator COSI. As such, COSI's control over and connection to the Oklahoma Defendants as well as non-Oklahoma Defendants and their wrongful activities is more than sufficient to establish specific jurisdiction in the Eastern District of Oklahoma.

### a. The Exercise of Jurisdiction is Reasonable under the Circumstances

An analysis of the *Intercon* five factors weigh heavily in favor of finding reasonableness in the exercise of personal jurisdiction against COSI in this case. Particularly:

**1) Burden on the Defendant.** Although filed in Oklahoma, the ease of electronic filing in Federal Court makes this forum accessible from any location with Internet. Further, the allegations in this Complaint involve wrongful acts across the United States, Canada, and the United Kingdom. Since the majority of the Defendants are located in the United States, the largest number of individual defendants are located in Oklahoma, and the hub of the civil conspiracy is in the Eastern District of Oklahoma, the Eastern District of Oklahoma is the most centrally located forum.

Plaintiffs were not required to devise creative and imaginative arguments to justify leaving their home state of Indiana and choosing to file the instant case in the Eastern District of Oklahoma; they merely had to follow the trail of breadcrumbs left by RTC, COSI, Narconon International, governed by autocratic mastermind David Miscavige and utilizing the hands and feet of the other Defendants. The trail led Plaintiffs straight to the epicenter at Narconon

Arrowhead in the Eastern District of Oklahoma. Thus, the first factor weighs in favor of exercising jurisdiction.

**2) Forum state's interest in resolving the dispute.** This State houses the majority of the wrongful activities set forth in Plaintiffs' Complaint, with the largest number of Defendants being citizens of this State. Additionally, Narconon Arrowhead is considered by COSI to be the hub of the Narconon Network. As set forth on COSI's website: "Narconon Arrowhead also serves as the international training center.... has provided on-site training for professionals from 13 nations and 43 U.S. states." (http://www.scientology.org/david-miscavige/narconon.html).

Also, Oklahoma has an interest in adjudicating a dispute like this, which involves many non-residents because the conduct affects Oklahoma residents. *See OMI Holdings*, *supra*, 149 F.3d at 1096. Oklahoma residents are the targets of Defendants' concerted campaign to grow Narconon Arrowhead, the Narconon Network, and consequently the Church of Scientology. Accordingly, the 2nd factor weighs in favor of exercising jurisdiction.

**3) Plaintiffs' interest in receiving convenient and effective relief.** Plaintiffs have recently uncovered this enormous conspiracy involving at least eighty-two (82) separate defendants. If Plaintiffs were required to file a separate lawsuit for each Defendant, Plaintiffs' rights would be significantly hindered. Plaintiffs, including the Non-Profit NAFC, do not have the expansive and unlimited resources to pursue litigation on such a large scale. Instead, the burden would be so overwhelming as to prevent Plaintiffs from being to pursue their claims at all. Specifically, in relation to both the trademark infringement and the civil conspiracy claims, there would be a large amount of duplicative work necessary with regard to discovery, especially with the depositions of multiple defendants whose conduct touches multiple jurisdictions.

Plaintiffs' interest far outweighs Defendants' interest in this matter. Therefore, the 3rd factor weighs in favor of exercising jurisdiction.

**4) Interstate judicial system's interest in obtaining the most efficient resolution of controversies.** The key inquiries for this portion of the analysis are "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, *supra*, 149 F.3d at 1097. Each of these inquiries, mostly discussed in paragraphs 1-3 above, favors the Court exercising jurisdiction in this case. A majority of the material witnesses are located in Oklahoma, the epicenter of the underlying wrongs occurred in Oklahoma, and substantial steps in furtherance of the conspiracy occurred in Oklahoma. Further, as discussed in paragraph 3 above, multiple depositions of the same defendants hardly constitute the most efficient resolution of controversies. Finally, the governing law is federal, and piecemeal litigation would most certainly result if Plaintiffs were forced to dismiss certain Defendants. Accordingly, the fourth factor weighs in favor of exercising jurisdiction.

**5) Shared interest of the several states in further fundamental substantive social policies.** Public policy considerations are endemic to this case. People put their lives as well as the lives of their children, spouses, parents, etc., into the hands of professionals working in the drug rehabilitation field. The hijacking of the Plaintiffs' marks and accreditation creates a false aura of expertise where none exists, and the public, as well as Plaintiffs, are damaged as a result. While some Defendants argue that the violations were unintentional or focus on the relative size of the violation in the scheme, it only underscores the importance of this Court exercising jurisdiction to maintain a single lawsuit rather than burdening the innocent Plaintiffs with the necessity of filing lawsuits in numerous states. Litigating this case together in Oklahoma is

analogous to having all the pieces of a jigsaw puzzle in one place.  Permitting Defendants to scatter the pieces of the jigsaw puzzle throughout various jurisdictions across the country will prevent the entire picture, the civil conspiracy, from being exposed and uncovered.

Further, because this lawsuit is premised upon federal law, several states share an interest with Oklahoma and the policies embodied by the federal law.  As for the international Defendants, they have all willingly participated in the growth of the Narconon Network, which is a United States network.  The foreign citizens chose to conduct business with Narconon and the laws governing this dispute are in the United States.  For these reasons, the fifth factor weighs in favor of exercising jurisdiction.

### III.   PLAINTIFFS' COMPLAINT SUFFICIENTLY STATES CLAIMS AGAINST THE MOVING DEFENDANTS

Defendant COSI's arguments for Plaintiffs' alleged failure to state a claim are covered in Plaintiffs' Response to the Motion to Dismiss of the Pita Group, Inc., et al., and as such Plaintiffs hereby incorporate by reference in their entirety the Response to the Motion to Dismiss of the Pita Group, Inc., et al. as well as all other Responses to Defendants Motions to Dismiss that have been filed in this matter.

### IV.   ALTERNATIVE REQUEST FOR LEAVE TO AMEND

Assuming *arguendo* the Court finds Plaintiffs failed to allege sufficient facts under FED.R.CIV.P. Rule 12(b)(6), Plaintiffs hereby request leave to amend.  Pursuant to FED.R.CIV.P. Rule 15(a), leave to amend shall be freely given when justice so requires.  The liberal policy allowing for amendments reflects the general policy in the American system that claims should be heard on their merits.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Unless there is an apparent or declared reason, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party or futility of the amendment, the court's refusal to allow an amendment is an abuse of discretion. *Id*.

This matter remains in its infancy. Only two Defendants have answered the Complaint. Approximately half of the Defendants have filed responsive motions, many of which have not yet completed their briefing cycle and none upon which the Court has ruled. Plaintiffs have not delayed in this request or made any previous applications to amend. Additionally, as demonstrated to the Court in the evidence submitted concerning personal jurisdiction, there are more than sufficient facts alleged concerning the Defendants' roles in the conspiracy, meaning the amendment would not be futile. Because the request is timely, made in good faith, without prejudice to the Defendants, and is not futile, Plaintiffs respectfully request the Court grant Plaintiffs leave to amend if necessary.

## *CONCLUSION*

As demonstrated herein, Plaintiffs have presented sufficient facts to make a prima facie showing of minimum contacts in the State of Oklahoma to establish personal jurisdiction over the Church of Scientology International. Under the circumstances of this case, all of the relevant factors weigh in favor of the reasonableness of this Court exercising personal jurisdiction over the Church of Scientology International. Additionally, Plaintiffs have set forth a series of well-pleaded facts sufficient to set forth Plaintiffs' claims against all Defendants. Alternatively, Plaintiffs request leave to amend the Complaint if necessary.

WHEREFORE, Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors respectfully pray the Court deny Defendant Church of Scientology International's Motion to Dismiss and for such further relief as the Court deems just and proper.

Respectfully submitted,

**KEESLING LAW GROUP, PLLC**

_s/ David R. Keesling_
David R. Keesling, OBA # 17881
Heidi L. Shadid, OBA # 22897
Sloane Ryan Lile, OBA # 21342
401 S. Boston Ave.
Mid-Continent Tower, Suite 450
Tulsa, OK 74103
(918) 924-5101 Phone
(918) 512-4888 Fax
David@KLGattorneys.com
Heidi@KLGattorneys.com
Sloane@KLGattorneys.com

*Attorneys for Plaintiffs National Association of Forensic Counselors, Inc. and American Academy of Certified Forensic Counselors, Inc. d/b/a ACCFC of Certified Forensic Counselors*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 2, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

    Charles D. Neal
    Donald M. Bingham
    David L. Bryant
    Wm. Gregory James
    M. David Riggs
    John H. Tucker
    Richard P. Hix
    David E. Keglovits
    John J. Carwile
    Amelia A. Fogleman
    Colin H. Tucker
    Stacie L. Hixon
    Rachel D. Parrilli
    Kerry R. Lewis
    Denelda L. Richardson
    Alison A. Verret
    Todd Nelson
    Robert Nelon
    Nathan Haskins
    Tom O'Leary

          s/ David R. Keesling,
          *Attorney for Plaintiffs*