# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| National Association of Forensic Counselors, Inc., et al., | |
| Plaintiffs, | |
| v. | Case No. CIV-14-187-RAW |
| Narconon International, et al., | |
| Defendants. | |

## ORDER

Plaintiffs filed this action against 82 Defendants, alleging the following claims: (1) federal trademark infringement; (2) common law trademark infringement; (3) federal infringement pursuant to 15 U.S.C. § 1125; (4) violation of right of publicity pursuant to 12 OKLA. STAT. § 1449; (5) civil conspiracy; and (6) injunction. Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") is a non-profit corporation and the parent corporation of Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC"), a for-profit corporation. Both Plaintiffs are organized under the laws of the State of Nevada, with their principal places of business located in Fort Wayne, Indiana.

Before the court are the Motions to Dismiss for failure to state a claim upon which relief may be granted filed by Defendants Pita Group, Inc., Gary Smith, Derry Hallmark, Janet Watkins, Tom Widmann, Vicki Smith, Michael Otto, Michael J. Gosselin, Kathy Gosselin, Michael George, Dena G. Goad, and Michael St. Amand ("the Oklahoma Defendants") [Docket

No. 287]; by Rebecca Pool[1] [Docket No. 283]; by Association for Better Living and Education International ("ABLE")[2] [Docket No. 292]; and by Narconon International[3] [Docket No. 295]. The Oklahoma Defendants, Rebecca Pool, ABLE and Narconon International are herein referred to collectively as "the Moving Defendants."

In addition to reviewing the parties' briefs and exhibits, including those attached to other motions and responses, the court heard oral argument on March 24 and 26, 2015. Rebecca Pool, ABLE and Narconon International adopted the arguments asserted by the Oklahoma Defendants in their briefs and at the hearing on March 24, 2015.[4] For the reasons set forth below, the Motions to Dismiss for failure to state a claim upon which relief may be granted are granted in part and denied in part.

## ALLEGATIONS IN THE COMPLAINT
## MENTIONING THE MOVING DEFENDANTS[5]

### Pita Group

6. Defendant Pita Group, Inc. is a Non-Profit Corporation organized under the laws of the State of Oklahoma, with its principal place of business located in McAlester, Oklahoma, doing

---

[1]Rebecca Pool did not assert an argument under Fed. R. Civ. P. 12(b)(2). Additionally, at the March 26, 2014 hearing, counsel informed the court that her argument regarding service is now moot.

[2]ABLE withdrew its Rule 12(b)(2) argument.

[3]After oral argument at the hearing on March 26, 2015, the court denied Narconon International's Rule 12(b)(2) motion. The court also ruled that Plaintiffs may amend their Complaint with regard to Narconon International, but not with regard to any other Defendant.

[4]See briefs at Docket Nos. 283, 292 and 295 and transcript of March 26, 2015 hearing.

[5]Emphasis supplied.

business in the State of Oklahoma, Pittsburg County.

86. This Court has personal jurisdiction over Defendants because Defendants Narconon International, Narconon Arrowhead, <u>Pita Group</u>, Inc., Gary W. Smith, Derry Hallmark, Janet Watkins, Tom Widmann, Vicki Smith, Michael Otto, Michael J. Gosselin, Kathy Gosselin, Michael George, Kent McGregor, Dena G. Goad a.k.a. Dena G. Boman, and Michael St. Amand reside within this District, have their principal place of business is (sic) within this District, regularly transact and conduct business within this District, and otherwise have made or established contacts with this District sufficient to permit the exercise of personal jurisdiction. Personal jurisdiction exists over all Defendants because they purposefully directed their continuous and systematic activities at the forum state through the maintenance and operation of active websites to engage individuals in the forum state, which constitutes the requisite minimum contacts. Additionally, personal jurisdiction exists over all Defendants due to Defendants' participation in a civil conspiracy with its co-Defendants located in this forum.

113. Defendants <u>Pita Group</u>, Inc., Intervention Services, Dena Goad a.k.a. Dena Boman, Kent McGregor, Robert "Bobby" Wiggins, Kevin Lee, Sharon Kubacki, Steven Bruno, and David S. Lee, III (collectively "<u>Narconon Referral Entities</u>") are all drug treatment and intervention entities and individuals which operate websites for the purpose of referring business to Narconon Treatment Centers in exchange for a referral fee.

159. Defendant The <u>Pita Group</u>, Inc. falsely claimed on its website that it had the authority to bestow the certificate of Certified Chemical Dependency Counselor in conjunction with NAFC.

160. Additionally, The <u>Pita Group</u>, Inc.'s company Facebook page continues to falsely

advertise: "The PITA Group Inc. developed the Prevention Certification Program for the State of Colorado and has bestowed the certificate of Certified Chemical Dependency Counselor to over two hundred professionals since 1996 in conjunction with the National Association of Forensic Counselors." https://www.facebook.com/pitaprofessionalconsulting/info?ref=stream.

161. Defendant Kent McGregor, through Defendant The Pita Group, Inc., Defendant Narconon Colorado, and professionally through LinkedIn, falsely advertises himself as C.C.D.C. and as Masters Addictions Social Work Counselor through the National Association of Forensic Counselors, Board of Chemical Dependency Counselors, when in reality NAFC has no record of his certification.

**Gary Smith**

31. Upon information and belief, Defendant Gary W. Smith currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

116. Defendant ABLE continues to publish numerous documents supporting the Narconon Treatent Centers and its counselors, falsely referencing the C.C.D.C. certifications of certain individuals, including Defendants Gary W. Smith and Clark Carr.

127. Defendant Gary Smith continues to advertise himself as C.C.D.C. on Narconon Arrowhead's website under its program description video, which is also posted on other Narconon Arrowhead owned websites, such as www.stopaddiction.com.

137. Defendant Gary Smith, through Defendant Narconon Arrowhead and Defendant Narconon International, social media sites and numerous other publications, continues to

advertise himself as a C.C.D.C., despite his revocation on March 1, 2013 and his receipt of notifications to cease and desist dated March 1, 2013 and May 6, 2013.

138. Defendant Gary Smith's advertisement as C.C.D.C. on Facebook did not cease until after the McAlester News Capital published an article on March 27, 2013 concerning the revocation.

139. Additionally, Defendant Gary Smith has failed to return his C.C.D.C. certificate and wallet cards as required by his revocation.

144. Addiction Assistance's website lists the false C.C.D.C. credentials for Defendants Derry Hallmark, Gary W. Smith, Michael J. Gosselin, Kathy Gosselin, and Michael St. Amand.

171. Defendant Glen Petcavage owns and operates the website narcononcolorado.org, which promises a call back from a Certified Chemical Dependency Counselor and continues to post the false credentials of Gary Smith as C.C.D.C. despite its revocation in March 2013.

177. Defendant Robert J. Hernandez, as President of Defendant Golden Millennium, also advertises Defendant Gary W. Smith's as C.C.D.C. on Golden Millennium's website www.getcured.org.

188. Also on the same servers NS1.GREATCIRCLESTUDIOS.NET and NS2.GREATCIRCLESTUDIOS.NET is the website www.narcononeastus.org, which falsely advertises Defendant Gary Smith as C.C.D.C. despite his revocation in March 2013.

205. Defendant Anthony Bylsma owns and operates the website www.drugprevention.org, which continues to post the false credentials of Defendant Gary W. Smith as C.C.D.C., despite his revocation in May 2013.

**Derry Hallmark**

32. Upon information and belief, Defendant <u>Derry Hallmark</u> currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

128. Additionally, www.addiction2.com, which is owned and operated by Defendants <u>Derry Hallmark</u> and Narconon Arrowhead, continues to post an altered version of the defunct NBAE Certificate on the credential page for Defendant Narconon Arrowhead.

129. Defendants Narconon of Georgia, Narconon Arrowhead, Dena Boman, GreatCircle Studios and <u>Derry Hallmark</u> advertise through multiple websites that "[t]he primary counselors are accredited by the National Board of Addiction Examiners as Certified Chemical Dependency Counselors."

142. Defendant <u>Derry Hallmark</u>, through Defendant Narconon Arrowhead, advertises himself as C.C.D.C., when in reality his certification expired on February 28, 2010.

143. Additionally, <u>Hallmark</u> operates and has registered the website www.addiction2.com through the apparently unregistered and unincorporated entity Addiction Assistance.

144. Addiction Assistance's website lists the false C.C.D.C. credentials for Defendants <u>Derry Hallmark</u>, Gary W. Smith, Michael J. Gosselin, Kathy Gosselin, and Michael St. Amand.

169. Defendants <u>Derry Hallmark</u> and Narconon Arrowhead own and operate the website www.faithdrugrehab.com, which falsely posts the credentials of Defendant McLaughlin as M.A.C. (despite its expiration in June 2011) and DBAE (which does not exist), and which

falsely advertises the ability to become C.C.D.C. through the unauthorized and unapproved workshops.

206. Defendant Kenneth Pomerance owns and operates the website www.addictionrehabfinder.com, which continues to post the false credentials of <u>Derry Hallmark</u> as C.C.D.C. despite its expiration in 2010.

**<u>Janet Watkins</u>**

34. Upon information and belief, Defendant <u>Janet Watkins</u> currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

146. Defendant <u>Janet Watkins</u>, through Defendant Narconon Arrowhead, advertises herself as C.C.D.C., when in reality NAFC has no record of her certification. (NAFC maintains all current certifications and a database of all certifications that have been suspended or been revoked. NAFC also maintains a database of certifications that have expired within the last five (5) years.)

**<u>Tom Widmann</u>**

35. Upon information and belief, Defendant <u>Tom Widman</u> currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

147. Defendant <u>Tom Widman</u>, through Defendant Narconon Arrowhead, advertises himself as C.C.D.C., when in reality NAFC has no record of his certification.

**Vicki Smith**

36. Upon information and belief, Defendant <u>Vicki Smith</u> currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

148. Defendant <u>Vicki Smith</u>, through Defendant Narconon Arrowhead and in her position as Senior Case Manager, advertises herself as MAC, when in reality her certification expired on July 30, 2010.

**Michael Otto**

37. Upon information and belief, Defendant <u>Michael Otto</u> currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

149. Defendant <u>Michael Otto</u>, through Narconon Arrowhead and on a personal blogging website kayakotto-drugfree.blogspot.com, advertises himself as C.C.D.C., when in reality his certification expired on November 30, 2012.

150. As recently as March 12, 2013, Defendant <u>Michael Otto</u> continued to use the C.C.D.C. designation after his name in the signature line of his professional e-mail communications.

151. Additionally, <u>Defendant Otto</u> was denied reinstatement due to his refusal to submit to NAFC proceedings or respond to formal complaints and his continued advertisement of C.C.D.C. after expiration.

152. <u>Defendant Otto</u> continues to advertise himself as a C.C.D.C., despite his receipt of notification to cease and desist dated March 18, 2013 and May 6, 2013.

153. Additionally, Defendant Otto has failed to return his C.C.D.C. certificate and wallet cards as required by his revocation.

**Michael J. Gosselin**

38. Upon information and belief, Defendant Michael J. Gosselin currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

144. Addiction Assistance's website lists the false C.C.D.C. credentials for Defendants Derry Hallmark, Gary W. Smith, Michael J. Gosselin, Kathy Gosselin, and Michael St. Amand.

154. Defendant Michael J. Gosselin, through Narconon Arrowhead, advertises himself as C.C.D.C., when in reality his certification was revoked on April 16, 2013.

155. Defendant M. Gosselin continues to advertise himself as a C.C.D.C., despite his receipt of notification to cease and desist dated April 16, 2013 and June 10, 2013 and has failed to return his C.C.D.C. certificate as required by his revocation.

**Kathy Gosselin**

39. Upon information and belief, Defendant Kathy Gosselin currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

144. Addiction Assistance's website lists the false C.C.D.C. credentials for Defendants Derry Hallmark, Gary W. Smith, Michael J. Gosselin, Kathy Gosselin, and Michael St. Amand.

156. Defendant Kathy Gosselin, through Narconon Arrowhead, advertises herself as C.C.D.C., when in reality her certification was revoked on March 5, 2013.

157. Defendant <u>K. Gosselin</u> continues to advertise herself as a C.C.D.C., despite her receipt of notification to cease and desist dated March 5, 2013 and May 6, 2013, and has failed to return her C.C.D.C. certificate and wallet cards as required by her revocation.

**Michael George**

40. Upon information and belief, Defendant <u>Michael George</u> currently is a resident and citizen of Canadian, State of Oklahoma.

86. See this text under the Pita Group heading above.

158. Defendant <u>Michael George</u>, through Narconon Arrowhead as well as professionally through LinkedIn, advertises himself as C.C.D.C., when in reality his certification expired on August 30, 2012.

**Dena G. Goad**

57. Upon information and belief, Defendant <u>Dena G. Goad</u> a.k.a Dena G. Boman currently is a resident and citizen of Bixby, State of Oklahoma.

86. See this text under the Pita Group heading above.

113. Defendants Pita Group, Inc., Intervention Services, <u>Dena Goad</u> a.k.a. Dena Boman, Kent McGregor, Robert "Bobby" Wiggins, Kevin Lee, Sharon Kubacki, Steven Bruno, and David S. Lee, III (collectively "<u>Narconon Referral Entities</u>") are all drug treatment and intervention entities and individuals which operate websites for the purpose of referring business to Narconon Treatment Centers in exchange for a referral fee.

232. Defendant <u>Dena G. Goad</u> a.k.a. Dena G. Boman ("Goad") is a former graduate of the Narconon Arrowhead program.

233. After graduation from the program, <u>Goad</u> began operating a series of websites in order to refer potential patients to the Narconon Treatment Centers.

234. <u>Goad</u> currently operates numerous URLs to attract potential Narconon Treatment Center patients, including but not limited to: www.drugrehabandtreatmentcenters.org, www.crackcocaineaddict.org, www.texasrehabcenters.net, www.heroinaddictionrehab.org, www.addictiontreatmentoklahoma.org, www.drugrehabcentersiningliss.com, www.drugrehabinpatient.org, www.methrehab.org, www.cocainedrugrehabs.com, www.drugaddictionheroin.org, www.treatmentsolutionsnow.com, and www.tulsadrugrehabcenters.com.

235. Each of <u>Goad</u>'s URLs provides links to each of the fifty States and cities within those States with each page falsely claiming (a) "[O]ur trained counselors are Certified Chemical Dependency Counselors," (b) "Call 1-877-212-2070 to speak to a Certified Chemical Dependency Counselor today, don't wait," and (c) "Drug Rehab Referral Certified Chemical Dependency Counselor."

236. <u>Goad</u>'s NAFC Certification was suspended on April 1, 2013 and subsequently revoked on May 23, 2013, both via letters demanding Goad cease and desist from the improper use of the certification.

237. For her referrals, <u>Goad</u> received payment from Narconon Arrowhead in 2008 of $161,757.00, which has grown to $250,455.00 in 2011.

**Michael St. Amand**

78. Upon information and belief, Defendant <u>Michael St. Amand</u> currently is a resident and citizen of Eufaula, State of Oklahoma.

86. See this text under the Pita Group heading above.

140. Defendant <u>Michael St. Amand</u> continues to advertise himself as C.C.D.C., despite the revocation of his certification on March 7, 2013.

144. Addiction Assistance's website lists the false C.C.D.C. credentials for Defendants Derry Hallmark, Gary W. Smith, Michael J. Gosselin, Kathy Gosselin, and <u>Michael St. Amand</u>.

**<u>Rebecca Pool</u>**

33. Upon information and belief, Defendant <u>Rebecca Pool</u> currently is a resident and citizen of Boston, State of Massachusetts.

145. Defendant <u>Rebecca Pool</u>, through Defendant Narconon Arrowhead, advertises herself as BAC, when in reality her certification expired on February 28, 2011.

**<u>Association for Better Living and Education International ("ABLE")</u>**

18. Defendant <u>Association for Better Living and Education International ("ABLE")</u> is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

114. Defendant Narconon International is a subsidiary of <u>ABLE</u>.

115. Narconon International, <u>ABLE</u>, Friends of Narconon, David Miscavige, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks and certifications.

116. Defendant <u>ABLE</u> continues to publish numerous documents supporting the Narconon Treatment Centers and its counselors, falsely referencing the C.C.D.C. certifications of certain individuals, including Defendants Gary W. Smith and Clark Carr.

117. Additionally, ABLEcanada1@gmail.com is listed as the contact e-mail address for the following Narconon domains: www.narconon.ca, www.news.narconon.ca, www.narconon.bc.ca, and www.narconon.on.ca.

231. In 2014, Defendant ABLE published an issue of "Solutions" magazine, which included an interview with Defendant Dion and falsely credits Defendant Dion as being a Certified Chemical Dependency Counselor, despite her expiration in February 2009.

246. Defendant ABLE is a Scientology organization formed to expand all Scientology activities and organizations within a particular continental area, which, relevant hereto, involves promotion of the drug rehabilitation fields, such as the Narconon Network.

247. Upon information and belief, RTC and ABLE strictly control Narconon as an arm of the Defendant Church of Scientology International through licensing agreements and L. Ron Hubbard's teachings.

249. Miscavige, RTC, ABLE and Church of Scientology participated in a scheme with the other Defendants to use the NAFC certifications to bolster the Narconon Network and its counselors in the public perception.

253. Defendants Narconon International, ABLE, Friends of Narconon, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the other individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks, and certifications.

**Narconon International**

3. Defendant Narconon International is a Non-Profit Corporation organized under the laws of the State of California, with its principal place of business located in Los Angeles,

California, doing business in the State of Oklahoma, Pittsburg County.

86. See this text under the Pita Group heading above.

112. Defendants Narconon Arrowhead, Narconon of Georgia, Inc., Narconon – Hawaii, Narconon Vista Bay, Narconon – Hawaii, Narconon Spring Hill, Best Drug Rehabilitation, Narconon Colorado, Narconon Fresh Start, Narconon South Texas, Narconon Eastern U.S., Narconon Trois-Rivieres, Freedom Center, Narconon UK, and Narconon Canada (collectively "Narconon Treatment Centers") are all drug treatment and rehabilitation facilities operating as a part of the Narconon Network run by <u>Narconon International</u>.

114. Defendant Narconon International is a subsidiary of ABLE.

115. <u>Narconon International</u>, ABLE, Friends of Narconon, David Miscavige, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks and certifications.

119. One of the programs set forth by <u>Narconon International</u> is the marketing program using NAFC credentials (regardless of veracity) to bolster Narconon Treatment Centers and counselors' credibility within the Narconon Network.

137. Defendant Gary Smith, through Defendant Narconon Arrowhead and Defendant <u>Narconon International</u>, social media sites and numerous other publications, continues to advertise himself as a C.C.D.C., despite his revocation on March 1, 2013 and his receipt of notifications to cease and desist dated March 1, 2013 and May 6, 2013.

175. Defendant Michael DiPalma continues to advertise himself as C.C.D.C. on LinkedIn and as a "Certified Chemical Dependency Counselor" on Defendant <u>Narconon</u>

International's website, when in reality his certification was revoked on May 23, 2013.

190. Additionally, Defendant Jonathan Beazley continues to falsely advertise himself on Narconon International's website as a "Certified Chemical Dependency Counselor", despite its expiration in December 2012.

226. Defendant Clark Carr ("Carr"), through Defendant Narconon International, advertises himself as C.C.D.C., when in reality his certification expired on November 30, 2012.

253. Defendants Narconon International, ABLE, Friends of Narconon, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the other individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks, and certifications.


**ALLEGATIONS IN THE COMPLAINT**
**MENTIONING ALL DEFENDANTS OR GROUPS OF DEFENDANTS[6]**

While many paragraphs in the Complaint refer to a specific Defendant or Defendants, Plaintiffs also include paragraphs referring to all Defendants, individual Defendants and groups of Defendants, including "the Narconon Network," and the "Narconon Referral Entities" and "Narconon Treatment Centers."  The court includes those paragraphs of the Complaint here:

111. For the purposes of this Complaint, the Narconon Network shall mean the drug rehabilitation facilities, treatment centers, referral and intervention entities and individuals who utilize the technology of L. Ron Hubbard in drug treatment as a fundraising and recruitment program of the Defendant Church of Scientology.

---

[6]Emphasis supplied.

112. Defendants Narconon Arrowhead, Narconon of Georgia, Inc., Narconon –

Hawaii, Narconon Vista Bay, Narconon – Hawaii, Narconon Spring Hill, Best Drug

Rehabilitation, Narconon Colorado, Narconon Fresh Start, Narconon South Texas, Narconon

Eastern U.S., Narconon Trois-Rivieres, Freedom Center, Narconon UK, and Narconon Canada

(collectively "Narconon Treatment Centers") are all drug treatment and rehabilitation facilities

operating as a part of the Narconon Network run by Narconon International.

113. Defendants Pita Group, Inc., Intervention Services, Dena Goad a.k.a. Dena

Boman, Kent McGregor, Robert "Bobby" Wiggins, Kevin Lee, Sharon Kubacki, Steven Bruno,

and David S. Lee, III (collectively "Narconon Referral Entities") are all drug treatment and

intervention entities and individuals which operate websites for the purpose of referring business

to Narconon Treatment Centers in exchange for a referral fee.

115. Narconon International, ABLE, Friends of Narconon, David Miscavige, RTC, and

Church of Scientology International operate a common scheme with the Narconon Treatment

Centers, the Narconon Referral Entities and the individual Defendants to promote the Narconon

Network through the misuse of NAFC logos, trademarks and certifications.

116. Defendant ABLE continues to publish numerous documents supporting the

Narconon Treatment Centers and its counselors, falsely referencing the C.C.D.C. certifications

of certain individuals, including Defendants Gary W. Smith and Clark Carr.

119. One of the programs set forth by Narconon International is the marketing program

using NAFC credentials (regardless of veracity) to bolster Narconon Treatment Centers and

counselors' credibility within the Narconon Network.

120. The individual Defendants have used the NAFC credentials by listing certifications

after Defendants' names, despite the revocation, suspension, expiration or lack of certification.

121. Additionally, the <u>individual Defendants</u> maintain websites that do not provide any names of certified individuals, but instead use the certifications and/or NBAE and NAFC names/logos to imply and mislead that they are unbiased, certified referral services.

122. These misleading websites are registered either to employees of various <u>Narconon Treatment Centers</u>, the <u>Narconon Treatment Centers</u> themselves, the <u>Narconon Referral Entities</u> or otherwise claimed on Narconon's IRS 990 Tax Forms.

123. The <u>Narconon Treatment Centers</u>, <u>Narconon Referral Entities</u> and the <u>individual Defendants</u> operate over 400 websites containing purported certifications of staff members that, in reality, have been suspended, revoked, or never existed or otherwise have improperly used the NAFC credentials by referencing the facilities numerous (unnamed) C.C.D.C. certified counselors and promising "consultation by a Certified Chemical Dependency Counselor" to anyone calling an 800 number.

124. Defendants falsely claim to have a "full staff" of Certified Chemical Dependency Counselors.

125. Additionally, Defendants' websites have posted the NAFC Logo without consent, an altered version of the logo, and an altered version of a defunct certificate.

136. Defendants have advertised that NAFC has accredited the <u>Narconon Treatment Centers</u>, which NAFC does not do.

233. After graduation from the program, Goad began operating a series of websites in order to refer potential patients to the <u>Narconon Treatment Centers</u>.

246. Defendant ABLE is a Scientology organization formed to expand all Scientology

activities and organizations within a particular continental area, which, relevant hereto, involves promotion of the drug rehabilitation fields, such as the <u>Narconon Network</u>.

248. In order to promote Defendants Church of Scientology, RTC and the <u>Narconon Treatment Centers</u>, Miscavige spoke during an event transmitted via satellite from a packed Ruth Eckerd Hall in Clearwater, Florida concerning the NBAE certifications, falsely claiming:

a. That the NBAE certifications are a necessary prerequisite for counselors to obtain insurance and state or federal funding;

b. That NBAE was influenced by the L. Ron Hubbard drug rehab technology;

c. That Narconon executives have been accepted to the NBAE;

d. That Narconon executives have the authority to provide drug certifications;

e. That Narconon staff briefed the NBAE on L. Ron Hubbard's drug rehab technology and how their staff are trained - it changed NBAE's whole "think"; and

f. That the training in L. Ron Hubbard's technology at Narconon now officially replaced all college training requirements.

249. Miscavige, RTC, ABLE and Church of Scientology participated in a scheme with the other Defendants to use the NAFC certifications to bolster the <u>Narconon Network</u> and its counselors in the public perception.

250. Defendants own a series of domains that use the NAFC logo and certifications improperly and without authorization, including but not limited to www.narconon-news.org, www.narconon.drugrehabnews.net, www.drugrehabthatworks.com, www.sunshinesummitlodge.com, www.rainbowcanyonretreat.com, www.addicted.org,

www.drug-rehab-colorado.com, www.inpatient-drug-rehab.org, www.theroadout.org,
www.prescription-abuse.org, www.ecstasyonline.org, www.drugrehabcentersiningliss.com,
www.californiadrugandalcoholrehab.com, www.treatmentforxanaxaddiction.com,
www.crystalmethaddictionsymptoms.com, www.whatisnarconon.com.

251. Defendants have recently been the subjects of negative media attention as a consequence of lawsuits that have been filed against Defendants' Treatment Centers due to deaths of residents/patients and raids by the government.

253. Defendants Narconon International, ABLE, Friends of Narconon, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the other individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks, and certifications.

254. Ultimately, the promotion of the Narconon Network is done to further the goals and purposes of the Church of Scientology to "clear" the world and for a planetary dissemination of Scientology ideals.

255. The Scientology religion is carried out through corporations, such as Narconon, which are responsible for delivering Scientology religious technology in their operations.

256. The NAFC logos and designations are willfully used by Defendants to bolster the credibility of the Narconon Treatment Centers and counselors in order to draw members into the Church of Scientology and for the increase in profit at the expense of Plaintiffs.

257. Plaintiffs have recently learned about Defendants' schemes and misuse of the certifications, logos and links.

258. As a consequence of Defendants' actions, the NAFC certifications have been

devalued to the public, the State registration boards, the national boards and the national authorities, including causing serious questions concerning the independence of NAFC.

259. As a consequence of Defendants' actions, Plaintiffs have suffered significant financial and reputational damages while Defendants have obtained significant financial and reputational benefit.

293. Defendants intentionally engaged in a common plan to utilize NAFC's Certification, Mark and Logo to attract customers to Defendants' drug treatment facilities.

294. Defendants were aware of the common plan and the common purpose: to receive acclaim in the industry and consequently profit and to attract new members to the Church of Scientology, based on the use of the NAFC Certifications, Mark and Logo.

295. Defendants acted in concert, agreed and cooperated to achieve such misuse and each took affirmative steps to encourage the achievement of their plan.

## MOTIONS TO DISMISS

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in the Petition and construes those facts in the light most favorable to Plaintiffs. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions.[7]

To survive the motion to dismiss, the Complaint "must contain sufficient factual matter,

---

[7]"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678

(citing Twombly, 550 U.S. at 570).  Plaintiffs must nudge their "claims across the line from

conceivable to plausible." Twombly, 550 U.S. at 570.  The plausibility standard requires "more

than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.  "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550

U.S. at 557) (internal quotations omitted).  In other words, the well-pleaded facts must "permit

the court to infer more than the mere possibility of misconduct." Id. at 679.

The Tenth Circuit has noted that "'plausibility' in this context must refer to the scope of

the allegations in a complaint: if they are so general that they encompass a wide swath of

conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line

from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

"The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just

speculatively) has a claim for relief." Id.  The plausibility requirement "serves not only to weed

out claims that do not (in the absence of additional allegations) have a reasonable prospect of

success, but also to inform the defendants of the actual grounds of the claim against them." Id. at

1248.

In a case against multiple defendants, "it is particularly important . . . that the complaint

make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with

fair notice as to the basis of the claims against him or her . . . ." Id. at 1250 (emphasis in

original).  Otherwise, the Complaint would fail to provide fair notice and to present a plausible

right to relief.

In sum, the "Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." Burnett v. Mortgage Elec. Registration Sys., Inc., 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)).

When a Complaint falls short of the Twombly/Iqbal standards, pursuant to Fed. R. Civ. P. 15(a)(2), the court freely gives leave to amend. Of course, where it is clear that amendment would be futile, the court does not. Moreover, "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based. Albers v. Board of Cnty. Comm'rs of Jefferson Cnty. Colo., 771 F.3d 697, 706 (10th Cir. 2014).


### *Section 32 of the Lanham Act*
### *Federal Trademark Infringement Pursuant to 15 U.S.C. § 1114(1)*

Plaintiffs' first claim is violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Section 1114(1) protects against infringement of *registered* trademarks. Section 32(1) provides:

(1) Any person who shall, without the consent of the registrant –

(A) use in commerce any reproduction, counterfeit, copy or colorable imitation of a *registered* mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(B) reproduce, counterfeit, copy, or colorably imitate a *registered* mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of

> goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1) (emphasis added).

"To state a claim for trademark infringement under 15 U.S.C. § 1114(1) or cyberpiracy under 15 U.S.C. § 1125(d), the party bringing the action *must be the registered owner* (or assignee) of the mark." Hargrave v. Chief Asian, LLC, 479 Fed.Appx. 827, 829 (10th Cir. 2012) (emphasis added). Plaintiffs allege that Plaintiff NAFC is the owner of the federal trademark NATIONAL ASSOCIATION OF FORENSIC COUNSELORS, Registration No. 3585933, filed May 14, 2008 (hereinafter "the NAFC Mark"). Complaint, Docket No. 3, p. 19. Plaintiffs do not allege that they are the registered owners of any other trademarks. Accordingly, Plaintiffs' first claim applies only to the NAFC Mark.[8]

Like a Section 43 Lanham Act claim, to state a claim for trademark infringement under Section 32 of the Lanham Act, a plaintiff must show that: (1) the mark is valid and protectable; (2) the defendant used the mark in commerce without consent; and (3) the defendant's use of the mark is likely to cause confusion. Utah Lighthouse Ministry v. Foundation for Apologetic Info. and Research, 527 F.3d 1045, 1050 (10th Cir. 2008). As stated above, Plaintiffs allege the NAFC Mark is registered and thus valid and protectable. 15 U.S.C. § 1115(a). They sufficiently allege that any unauthorized use is likely to cause confusion. They do not, however, specifically

---

[8]To the extent Plaintiffs intended their first claim to apply to any other marks, it fails, as the NAFC Mark is the only mark they allege is registered.

allege that any of the Moving Defendants used the NAFC Mark.[9]

Instead, Plaintiffs argue that although the Moving Defendants did not actually use the NAFC Mark, they are liable for contributory infringement. "Akin to aiding and abetting, contributory infringement generally consists of either intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party." 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1240 (10th Cir. 2013). More specifically, "[c]ontributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." Id. at 1249.[10] Contributory liability "must be predicated on some *direct* infringement by the third party." Id. (emphasis in original).

Plaintiffs allege that Narconon of Georgia, Narconon Vista Bay, Richard Hawk and Steven K. Bruno directly infringed the NAFC Mark.[11] With the exception of Pita Group and

---

[9]The general allegations regarding Defendants' use of the logo are insufficient to state a claim under Twombly and Iqbal. As stated above, in a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." Robbins, 519 F.3d at 1250 (emphasis in original).

[10]See also Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844,, 854 (1982) ("Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.").

[11]Complaint, Docket No. 3, paragraphs 130, 131, 132, 202, 225, 252. Plaintiffs state that these Defendants used the NAFC logo. The registered NAFC Mark is included in the NAFC logo. In paragraphs 250, 253 and 256, Plaintiffs include additional general allegations regarding Defendants' unauthorized use of their logo, but those allegations do not meet Twombly/Iqbal standard.

The court also notes that in light of the court's ruling on certain Rule 12(b)(2) motions,

Dena Goad, nowhere in the Complaint do Plaintiffs allege that any of the Moving Defendants induced or enabled these or any other Defendants to infringe the NAFC Mark. Accordingly, this first claim fails as to all of the Moving Defendants except Pita Group and Dena Goad. Plaintiffs allege that Pita Group and Dena Goad are part of the "Narconon Referral Entities" and that they refer business to the "Narconon Treatment Centers." Narconon of Georgia and Narconon Vista Bay are termed by Plaintiffs as "Narconon Treatment Centers."

Defendants argue that Plaintiffs did not plead "contributory infringement" in the Complaint. Plaintiffs need not use the term "contributory infringement" in the Complaint. Plaintiffs have stated a plausible claim that Pita Group and Dena Goad "enabled" or "facilitated" the alleged infringement of the NAFC Mark by Narconon of Georgia and Narconon of Vista Bay by referring business to them. Plaintiffs have also made sufficient allegations to show that Pita Group and Dena Goad did so knowingly or while having reason to know.[12] The § 1114(1) claim against them, therefore, remains.

### Section 43 of the Lanham Act
### Federal Infringement Pursuant to 15 U.S.C. § 1125(a)(1)[13]

Plaintiff's third claim is violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1). Section 43 provides:

---

Plaintiffs have filed voluntary dismissals as to Narconon of Georgia and Richard Hawk. This does not affect the court's ruling here.

[12]Plaintiffs include allegations to show Pita Group's and Dena Goad's familiarity with NAFC.

[13]At the March 24, 2015 hearing, Plaintiffs' counsel stated that they did not intend to state a claim for false advertising.

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

"[A] party *who is not the registered owner* of a trademark may state a claim for trademark infringement under 15 U.S.C. § 1125(a)(1)." Hargrave, 479 Fed.Appx. at 829 (emphasis added). Because Plaintiffs' certification marks are not registered, Plaintiffs must show that they are protectable. Utah Lighthouse Ministry, 527 F.3d at 1050. "The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce, . . . and (3) that the defendant's use is likely to confuse consumers." 1-800 Contacts, Inc., 722 F.3d at 1238.

Plaintiffs allege that they hold a protectable interest in six NAFC certification marks: (1) Master Addictions Counselor ("MAC"); (2) Certified Chemical Dependency Counselor ("C.C.D.C."); (3) Certified Addictions Specialist ("CFAS"), formerly known as Certified Forensic Addictions Examiner ("CFAE"); (4) Certified Criminal Justice Addictions Specialist ("CCJAS"); Certified Co-Occuring Disorder Specialist ("CCODS"); (6) Baccalaureate Addictions Counselor ("BAC"). Complaint, Docket No. 3, p. 14-19. It is unclear why Plaintiffs

list all of these alleged certification marks in the Complaint, as Plaintiffs do not make any allegations of infringement as to some of them. For purposes of the Moving Defendants, the only marks at issue are the C.C.D.C. mark, the MAC mark and the BAC mark.

Specifically, Plaintiffs allege that the C.C.D.C. mark is being infringed by Pita Group, Gary Smith, Derry Hallmark, Janet Watkins, Tom Widmann, Michael Otto, Michael Gosselin, Kathy Gosselin, Michael George, Michael St. Amand, ABLE and Narconon International; that the MAC mark is being infringed by Vicki Smith; that the BAC mark is being infringed by Rebecca Pool; and that the NAFC Certification is being infringed by Dena Goad.[14] Plaintiffs include sufficient allegations to make plausible that the infringing use of their marks are likely to confuse consumers. Accordingly, this claim stands as specifically alleged against these Defendants.

Defendants argue that Plaintiffs' certification marks are descriptive and have no secondary meaning. The court need not reach this issue at this stage, however, as the "categorization of a mark is a factual question." Donchez v. Coors Brewing Co., 392 F.3d 1211, 1216 (10th Cir. 2004).

Plaintiffs allege contributory infringement as to this claim as well. As the court ruled above, with the exception of Pita Group and Dena Goad, nowhere in the Complaint do Plaintiffs allege that any of the Moving Defendants induced or enabled these or any other Defendants to infringe Plaintiffs' certification marks. To the extent the Narconon Treatment Centers infringed Plaintiffs' certification marks, Plaintiffs have stated a plausible claim that Pita Group and Dena

---

[14]It is unclear which of the NAFC certification marks Dena Goad is alleged to have infringed, but construing the Complaint liberally, the court will allow this claim to remain.

Goad enabled them with referrals.

### *Common Law Trademark Infringement*

Plaintiffs also include a claim for common law trademark infringement of the unregistered NAFC certification marks. "The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." Donchez v. Coors Brewing Co., 392 F.3d 1211, 1219 (10th Cir. 2004). A plaintiff must establish: "a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." Id. For the reasons stated in the section regarding the Section 43 Lanham Act Claims above, those rulings apply here as well.[15]

### *Right of Publicity Claim*

Plaintiffs have conceded this claim. Response, Docket No. 326, p. 15. The motion to dismiss it, therefore, is granted.

### *Civil Conspiracy*

Plaintiffs include a claim for civil conspiracy. "[C]ivil conspiracy itself does not create liability." Brock v. Thompson, 948 P.2d 297, 294 (Okla. 1997). "To be liable the conspirators

---

[15]Defendants argue that *certification* marks do not exist at common law. Defendants state that one district court outside this Circuit has considered the issue and recognized a common law certification mark, but that it has not been recognized in this Circuit. The court is not convinced that certification marks should be treated differently than other marks. As Plaintiffs have sufficiently pleaded the claim, it will remain at this time. Defendants, of course, may re-urge this argument in a summary judgment motion.

must pursue an independently unlawful purpose or use an independently unlawful means." Id.

Rather, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff

may recover for an underlying tort." Id. at 294 n.6.

Plaintiffs make several allegations that the individual and corporate Defendants

simultaneously infringed Plaintiffs' marks. Plaintiffs also allege generally that all Defendants

"engaged in a common plan to utilize NAFC's Certification, Mark and Logo to attract customers

to Defendants' drug treatment facilities"; "were aware of the common plan and the common

purpose: to receive acclaim in the industry and consequently profit and to attract new members

to the Church of Scientology, based on the use of the NAFC Certifications, Mark and Logo"; and

"acted in concert, agreed and cooperated to achieve such misuse and each took affirmative steps

to encourage the achievement of their plan." As the court stated at the March 26, 015 hearing,

these allegations are conclusory. The allegations certainly do not specify who did what to

whom.

Significantly, Plaintiffs make no specific allegation that any of the Moving Defendants

agreed with each other or with any other Defendant to infringe Plaintiff's marks. As the Tenth

Circuit stated in Twombly, "an allegation of parallel conduct and a bare assertion of conspiracy

will not suffice." Twombly, 550 U.S. at 556. Parallel conduct may be, and often is, perfectly

innocent. Iqbal, 556 U.S. at 696 (noting that the difficulty with the parallel conduct alleged in

Twombly was that it was "consistent with conspiracy, but just as much in line with a wide swath

of rational and competitive business strategy unilaterally prompted by common perceptions of

the market."). Accordingly, and for the reasons stated at the hearings on March 23, 24 and 26,

2015, Plaintiffs have failed to state a claim for civil conspiracy against the Moving Defendants.

*__Amendment__*

Plaintiffs have not filed a motion to amend or submitted a proposed Amended Complaint. In their Response, however, Plaintiffs request that if the court finds they failed to allege sufficient facts to plead a claim for trademark infringement and civil conspiracy, that they be granted leave to amend. Recognizing the importance of Fed. R. Civ. P. 7(b), the Tenth Circuit has "held that normally a court need not grant leave to amend when a party fails to file a formal motion." Albers, 771 F.3d at 706 (citing Calderon v. Kansas Dept. Of Soc. & Rehab. Servs., 181 F.3d 1180, 1186 (10th Cir. 1999). "For example, a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." Id. (citations omitted).

The Albers plaintiffs offered only a single sentence stating that the court should grant them leave to cure any deficiency. Plaintiffs do offer more here. They state that "the Court can see in the evidence submitted concerning personal jurisdiction in Plaintiffs' concurrently filed Responses to Motions to Dismiss, there are more than sufficient facts to be alleged concerning the Moving Defendants role in the trademark infringement and conspiracy and the dismissal[16] would not be futile." Response, Docket No. 326, p. 18. The concurrently filed Responses are Docket Numbers 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339 and 340. Plaintiffs also filed "Exhibits in Responses to Motions to Dismiss" at Docket Nos. 261 and 341.

The court has reviewed the referenced Responses and Exhibits and finds that as to the claims it is dismissing against the Moving Defendants, amendment would be futile. Plaintiffs

[16]The court believes Plaintiffs meant to state that *amendment* would not be futile.

30

have made no specific allegations and have submitted no evidence that would show that any of the Moving Defendants agreed with each other or with any other Defendants to infringe Plaintiffs' marks. For these and the reasons stated at the March 26, 2015 hearing, Plaintiffs may amend as to Narconon International, but not as to any other Defendant.

**CONCLUSION**

The Motions to Dismiss for failure to state a claim upon which relief may be granted [Docket Nos. 287, 283[17], 292[18] and 295[19]] are GRANTED in part and DENIED in part as follows:

1. The NAFC Mark: Plaintiffs' 15 U.S.C. § 1114(1) trademark infringement claims remain as to Pita Group and Dena Goad on contributory liability, but are dismissed as to all other Moving Defendants.

2. The Certification Marks: Plaintiffs' 15 U.S.C. § 1125(a)(1) and common law infringement claims remain as specifically alleged against the Moving Defendants[20] and against Pita Group and Dena Goad on contributory liability. In all other respects, Plaintiffs' 15 U.S.C. §

---

[17]As noted above, the issue of service is moot.

[18]As noted above, ABLE withdrew its Rule 12(b)(2) argument.

[19]As noted above, at the hearing on March 26, 2015, the court denied Narconon International's Rule 12(b)(2) motion.

[20]Plaintiffs specifically alleged claims for infringement of the:
(1) C.C.D.C. mark against Pita Group, Gary Smith, Derry Hallmark, Janet Watkins, Tom Widmann, Michael Otto, Michael Gosselin, Kathy Gosselin, Michael George, Michael St. Amand, ABLE and Narconon International;
(2) MAC mark against Vicki Smith;
(3) BAC mark against Rebecca Pool;
(4) at least one of the NAFC Certification Marks against Dena Goad.

1125(a)(1) and common law infringement claims are dismissed against the Moving Defendants.[21]

 3. Plaintiffs' right of publicity is dismissed as to all Moving Defendants.

 4. Plaintiffs' civil conspiracy claim is dismissed as to all Moving Defendants.

 Dated this 31st day of  March, 2015.


              _____
              Ronald A. White
              United States District Judge
              Eastern District of Oklahoma

---

[21]For example, Plaintiffs have no claim against Rebecca Pool for infringement of any certification mark other than the BAC mark.