# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| National Association of Forensic Counselors, Inc., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Narconon International, et al., <br><br> Defendants. | Case No. CIV-14-187-RAW |

## ORDER

Plaintiffs[1] filed this action against 82 Defendants, alleging the following claims: (1) federal trademark infringement; (2) common law trademark infringement; (3) federal infringement pursuant to 15 U.S.C. § 1125; (4) violation of right of publicity pursuant to 12 OKLA. STAT. § 1449; (5) civil conspiracy; and (6) injunction.

Before the court are the motions to dismiss for failure to state a claim upon which relief may be granted filed by Defendants Jason Burdge and Robert Newman (hereinafter collectively referred to as "the Moving Defendants") [Docket Nos. 462 and 463]. Both Mr. Burdge and Mr. Newman incorporate by reference the arguments set forth by Pita Group, Inc. et. al in their motion to dismiss and subsequent reply.[2] In their responses, Plaintiffs incorporate "all other

---

[1] Plaintiff National Association of Forensic Counselors, Inc. ("NAFC") is a non-profit corporation and the parent corporation of Plaintiff American Academy of Certified Forensic Counselors, Inc. d/b/a American College of Certified Forensic Counselors ("ACCFC"), a for-profit corporation. Both Plaintiffs are organized under the laws of the State of Nevada, with their principal places of business located in Fort Wayne, Indiana.

[2] Docket Nos. 287, 288 and 368.

responses" to motions to dismiss they have filed in this action. The court has considered the parties' briefs and exhibits, including the referenced briefs and exhibits. Additionally, the court heard oral argument on March 24 and 26, 2015. The court has considered the arguments made at those hearings as well. For the reasons set forth below, the motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are granted in part and denied in part.

**ALLEGATIONS IN THE COMPLAINT
MENTIONING THE MOVING DEFENDANTS**[3]

**Jason Burdge**

54. Upon information and belief, Defendant Jason Burdge currently is a resident and citizen of Manistee, State of Michigan.

221. Defendant Jason Burdge, previously through Narconon Arrowhead and currently through Defendant Best Drug Rehabilitation, Inc., advertises himself as C.C.D.C., when in reality his certification expired in August 2010.

222. Defendant Burdge posted a scanned copy of his NAFC Certificate on Defendant Best Drug Rehabilitation, Inc.'s website for over a year after leaving Narconon Arrowhead and the expiration of his certification.

223. Additionally, Defendant Burdge submitted a falsified application to NAFC in 2013 falsely claiming he holds an Oklahoma license and certification. His application was denied on April 1, 2013.

---

[3]Emphasis supplied.

**Robert Newman**

43. Upon information and belief, Defendant Robert "Bobby" Newman currently is a resident and citizen of Ewa Beach, State of Hawaii.

172. Defendant Robert "Bobby" Newman, through Defendant Narconon – Hawaii, advertises himself as C.C.D.C., when in reality NAFC has no record of his certification.

**ALLEGATIONS IN THE COMPLAINT
MENTIONING ALL DEFENDANTS OR GROUPS OF DEFENDANTS[4]**

While many paragraphs in the Complaint refer to a specific Defendant or Defendants, Plaintiffs also include paragraphs referring to all Defendants, individual Defendants and groups of Defendants, including "the Narconon Network," and the "Narconon Referral Entities" and "Narconon Treatment Centers." The court includes those paragraphs of the Complaint here:

111. For the purposes of this Complaint, the Narconon Network shall mean the drug rehabilitation facilities, treatment centers, referral and intervention entities and individuals who utilize the technology of L. Ron Hubbard in drug treatment as a fundraising and recruitment program of the Defendant Church of Scientology.

112. Defendants Narconon Arrowhead, Narconon of Georgia, Inc., Narconon – Hawaii, Narconon Vista Bay, Narconon – Hawaii, Narconon Spring Hill, Best Drug Rehabilitation, Narconon Colorado, Narconon Fresh Start, Narconon South Texas, Narconon Eastern U.S., Narconon Trois-Rivieres, Freedom Center, Narconon UK, and Narconon Canada (collectively "Narconon Treatment Centers") are all drug treatment and rehabilitation facilities

---

[4]Emphasis supplied.

operating as a part of the Narconon Network run by Narconon International.

113. Defendants Pita Group, Inc., Intervention Services, Dena Goad a.k.a. Dena Boman, Kent McGregor, Robert "Bobby" Wiggins, Kevin Lee, Sharon Kubacki, Steven Bruno, and David S. Lee, III (collectively "Narconon Referral Entities") are all drug treatment and intervention entities and individuals which operate websites for the purpose of referring business to Narconon Treatment Centers in exchange for a referral fee.

115. Narconon International, ABLE, Friends of Narconon, David Miscavige, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks and certifications.

116. Defendant ABLE continues to publish numerous documents supporting the Narconon Treatment Centers and its counselors, falsely referencing the C.C.D.C. certifications of certain individuals, including Defendants Gary W. Smith and Clark Carr.

119. One of the programs set forth by Narconon International is the marketing program using NAFC credentials (regardless of veracity) to bolster Narconon Treatment Centers and counselors' credibility within the Narconon Network.

120. The individual Defendants have used the NAFC credentials by listing certifications after Defendants' names, despite the revocation, suspension, expiration or lack of certification.

121. Additionally, the individual Defendants maintain websites that do not provide any names of certified individuals, but instead use the certifications and/or NBAE and NAFC names/logos to imply and mislead that they are unbiased, certified referral services.

122. These misleading websites are registered either to employees of various Narconon

Treatment Centers, the Narconon Treatment Centers themselves, the Narconon Referral Entities or otherwise claimed on Narconon's IRS 990 Tax Forms.

123. The Narconon Treatment Centers, Narconon Referral Entities and the individual Defendants operate over 400 websites containing purported certifications of staff members that, in reality, have been suspended, revoked, or never existed or otherwise have improperly used the NAFC credentials by referencing the facilities numerous (unnamed) C.C.D.C. certified counselors and promising "consultation by a Certified Chemical Dependency Counselor" to anyone calling an 800 number.

124. Defendants falsely claim to have a "full staff" of Certified Chemical Dependency Counselors.

125. Additionally, Defendants' websites have posted the NAFC Logo without consent, an altered version of the logo, and an altered version of a defunct certificate.

136. Defendants have advertised that NAFC has accredited the Narconon Treatment Centers, which NAFC does not do.

233. After graduation from the program, Goad began operating a series of websites in order to refer potential patients to the Narconon Treatment Centers.

246. Defendant ABLE is a Scientology organization formed to expand all Scientology activities and organizations within a particular continental area, which, relevant hereto, involves promotion of the drug rehabilitation fields, such as the Narconon Network.

248. In order to promote Defendants Church of Scientology, RTC and the Narconon Treatment Centers, Miscavige spoke during an event transmitted via satellite from a packed Ruth Eckerd Hall in Clearwater, Florida concerning the NBAE certifications, falsely claiming:

a. That the NBAE certifications are a necessary prerequisite for counselors to obtain insurance and state or federal funding;

b. That NBAE was influenced by the L. Ron Hubbard drug rehab technology;

c. That Narconon executives have been accepted to the NBAE;

d. That Narconon executives have the authority to provide drug certifications;

e. That Narconon staff briefed the NBAE on L. Ron Hubbard's drug rehab technology and how their staff are trained - it changed NBAE's whole "think"; and

f. That the training in L. Ron Hubbard's technology at Narconon now officially replaced all college training requirements.

249. Miscavige, RTC, ABLE and Church of Scientology participated in a scheme with the other Defendants to use the NAFC certifications to bolster the Narconon Network and its counselors in the public perception.

250. Defendants own a series of domains that use the NAFC logo and certifications improperly and without authorization, including but not limited to www.narconon-news.org, www.narconon.drugrehabnews.net, www.drugrehabthatworks.com, www.sunshinesummitlodge.com, www.rainbowcanyonretreat.com, www.addicted.org, www.drug-rehab-colorado.com, www.inpatient-drug-rehab.org, www.theroadout.org, www.prescription-abuse.org, www.ecstasyonline.org, www.drugrehabcentersiningliss.com, www.californiadrugandalcoholrehab.com, www.treatmentforxanaxaddiction.com, www.crystalmethaddictionsymptoms.com, www.whatisnarconon.com.

251. Defendants have recently been the subjects of negative media attention as a

consequence of lawsuits that have been filed against Defendants' Treatment Centers due to deaths of residents/patients and raids by the government.

253. Defendants Narconon International, ABLE, Friends of Narconon, RTC, and Church of Scientology International operate a common scheme with the Narconon Treatment Centers, the Narconon Referral Entities and the other individual Defendants to promote the Narconon Network through the misuse of NAFC logos, trademarks, and certifications.

254. Ultimately, the promotion of the Narconon Network is done to further the goals and purposes of the Church of Scientology to "clear" the world and for a planetary dissemination of Scientology ideals.

255. The Scientology religion is carried out through corporations, such as Narconon, which are responsible for delivering Scientology religious technology in their operations.

256. The NAFC logos and designations are willfully used by Defendants to bolster the credibility of the Narconon Treatment Centers and counselors in order to draw members into the Church of Scientology and for the increase in profit at the expense of Plaintiffs.

257. Plaintiffs have recently learned about Defendants' schemes and misuse of the certifications, logos and links.

258. As a consequence of Defendants' actions, the NAFC certifications have been devalued to the public, the State registration boards, the national boards and the national authorities, including causing serious questions concerning the independence of NAFC.

259. As a consequence of Defendants' actions, Plaintiffs have suffered significant financial and reputational damages while Defendants have obtained significant financial and reputational benefit.

293. Defendants intentionally engaged in a common plan to utilize NAFC's Certification, Mark and Logo to attract customers to Defendants' drug treatment facilities.

294. Defendants were aware of the common plan and the common purpose: to receive acclaim in the industry and consequently profit and to attract new members to the Church of Scientology, based on the use of the NAFC Certifications, Mark and Logo.

295. Defendants acted in concert, agreed and cooperated to achieve such misuse and each took affirmative steps to encourage the achievement of their plan.

**MOTIONS TO DISMISS**

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in the Petition and construes those facts in the light most favorable to Plaintiffs. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive the motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citing Twombly, 550 U.S. at 556). Plaintiffs must nudge their "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

The Tenth Circuit has noted that "'plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Id. The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." Id. at 1248.

In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." Id. at 1250 (emphasis in original). Otherwise, the Complaint would fail to provide fair notice and to present a plausible right to relief.

In sum, the "Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." Burnett v. Mortgage Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir.

9

2013) (quoting <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012)).

***Section 32 of the Lanham Act***
***<u>Federal Trademark Infringement Pursuant to 15 U.S.C. § 1114(1)</u>***

Plaintiffs' first claim is allegations of violations of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Section 1114(1) protects against infringement of *registered* trademarks. Section 32(1) provides:

> (1) Any person who shall, without the consent of the registrant –
>
> (A) use in commerce any reproduction, counterfeit, copy or colorable imitation of a *registered* mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (B) reproduce, counterfeit, copy, or colorably imitate a *registered* mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. 15 U.S.C. § 1114(1) (emphasis added).

"To state a claim for trademark infringement under 15 U.S.C. § 1114(1) or cyberpiracy under 15 U.S.C. § 1125(d), the party bringing the action *must be the registered owner* (or assignee) of the mark." <u>Hargrave v. Chief Asian, LLC</u>, 479 Fed.Appx. 827, 829 (10th Cir. 2012) (emphasis added). Plaintiffs allege that Plaintiff NAFC is the owner of the federal trademark <u>NATIONAL ASSOCIATION OF FORENSIC COUNSELORS</u>, Registration No. 3585933, filed May 14, 2008 (hereinafter "the NAFC Mark"). Complaint, Docket No. 3, p. 19. Plaintiffs do not

allege that they are the registered owners of any other trademarks. Accordingly, Plaintiffs' first claim applies only to the NAFC Mark.[5]

Like a Section 43 Lanham Act claim, to state a claim for trademark infringement under Section 32 of the Lanham Act, a plaintiff must show that: (1) the mark is valid and protectable; (2) the defendant used the mark in commerce without consent; and (3) the defendant's use of the mark is likely to cause confusion. Utah Lighthouse Ministry v. Foundation for Apologetic Info. and Research, 527 F.3d 1045, 1050 (10th Cir. 2008). As stated above, Plaintiffs allege the NAFC Mark is registered and thus valid and protectable. 15 U.S.C. § 1115(a). They sufficiently allege that any unauthorized use is likely to cause confusion. They do not, however, specifically allege that either of the Moving Defendants used the NAFC Mark.[6]

Instead, Plaintiffs argue that although the Moving Defendants did not actually use the NAFC Mark, they are liable for contributory infringement. "Akin to aiding and abetting, contributory infringement generally consists of either intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party." 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1240 (10th Cir. 2013). More specifically, "[c]ontributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or

---

[5]To the extent Plaintiffs intended their first claim to apply to any other marks, it fails, as the NAFC Mark is the only mark they allege is registered.

[6]The general allegations regarding Defendants' use of the logo are insufficient to state a claim under Twombly and Iqbal. As stated above, in a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her . . . ." Robbins, 519 F.3d at 1250 (emphasis in original).

11

having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." Id. at 1249.[7]  Contributory liability "must be predicated on some *direct* infringement by the third party." Id. (emphasis in original).

Plaintiffs allege that Narconon of Georgia, Narconon Vista Bay, Richard Hawk and Steven K. Bruno directly infringed the NAFC Mark.[8]  With the exception of Pita Group and Dena Goad, nowhere in the Complaint do Plaintiffs allege that any of the Moving Defendants induced or enabled these or any other Defendants to infringe the NAFC Mark.  Accordingly, Plaintiffs have not stated a claim for contributory infringement against the Moving Defendants.

***Section 43 of the Lanham Act***
***Federal Infringement Pursuant to 15 U.S.C. § 1125(a)(1)[9]***

Plaintiffs' third claim is violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).  Section 43 provides:

---

[7] See also Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844,, 854 (1982) ("Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.").

[8] Complaint, Docket No. 3, paragraphs 130, 131, 132, 202, 225, 252.  Plaintiffs state that these Defendants used the NAFC logo.  The registered NAFC Mark is included in the NAFC logo.  In paragraphs 250, 253 and 256, Plaintiffs include additional general allegations regarding Defendants' unauthorized use of their logo, but those allegations do not meet Twombly/Iqbal standard.
     The court also notes that in light of the court's ruling on certain Rule 12(b)(2) motions, Plaintiffs have filed voluntary dismissals as to Narconon of Georgia and Richard Hawk.  This does not affect the court's ruling here.

[9] At the March 24, 2015 hearing, Plaintiffs' counsel stated that they did not intend to state a claim for false advertising.

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

"[A] party *who is not the registered owner* of a trademark may state a claim for trademark infringement under 15 U.S.C. § 1125(a)(1)." Hargrave, 479 Fed.Appx. at 829 (emphasis added). Because Plaintiffs' certification marks are not registered, Plaintiffs must show that they are protectable. Utah Lighthouse Ministry, 527 F.3d at 1050. "The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce, . . . and (3) that the defendant's use is likely to confuse consumers." 1-800 Contacts, Inc., 722 F.3d at 1238.

Plaintiffs allege that they hold a protectable interest in six NAFC certification marks: (1) Master Addictions Counselor ("MAC"); (2) Certified Chemical Dependency Counselor ("C.C.D.C."); (3) Certified Addictions Specialist ("CFAS"), formerly known as Certified Forensic Addictions Examiner ("CFAE"); (4) Certified Criminal Justice Addictions Specialist ("CCJAS"); Certified Co-Occuring Disorder Specialist ("CCODS"); (6) Baccalaureate Addictions Counselor ("BAC"). Complaint, Docket No. 3, p. 14-19. It is unclear why Plaintiffs

13

list all of these alleged certification marks in the Complaint, as Plaintiffs do not make any allegations of infringement as to some of them.

The C.C.D.C. mark is the only mark at issue as to the Moving Defendants. Plaintiffs include sufficient allegations to make plausible that the infringing use of their marks are likely to confuse consumers. Accordingly, this claim stands, but only as specifically alleged against the Moving Defendants.[10]

Defendants argue that Plaintiffs' certification marks are descriptive and have no secondary meaning. The court need not reach this issue at this stage, however, as the "categorization of a mark is a factual question." Donchez v. Coors Brewing Co., 392 F.3d 1211, 1216 (10th Cir. 2004).

## *Common Law Trademark Infringement*

Plaintiffs also include a claim for common law trademark infringement of the unregistered NAFC certification marks. "The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act." Donchez v. Coors Brewing Co., 392 F.3d 1211, 1219 (10th Cir. 2004). A plaintiff must establish: "a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion." Id. For the reasons stated above in the

---

[10]Plaintiffs have not stated a claim for infringement of any of their other marks against the Moving Defendants.
The court notes that Plaintiffs allege contributory infringement as to this claim as well. As the court ruled above, with the exception of Pita Group and Dena Goad, nowhere in the Complaint do Plaintiffs allege that any of the Moving Defendants induced or enabled these or any other Defendants to infringe Plaintiffs' certification marks. Plaintiffs have not stated a claim for contributory infringement claim against the Moving Defendants.

section regarding the Section 43 Lanham Act Claims, those rulings apply here as well.[11]

### *Right of Publicity Claim*

Plaintiffs have conceded this claim. Response, Docket No. 326, p. 15. The motion to dismiss it, therefore, is granted.

### *Civil Conspiracy*

Plaintiffs include a claim for civil conspiracy. "[C]ivil conspiracy itself does not create liability." Brock v. Thompson, 948 P.2d 279, 294 (Okla. 1997). "To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." Id. Rather, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." Id. at 294 n.66.

Plaintiffs make several allegations that the individual and corporate Defendants simultaneously infringed Plaintiffs' marks. Plaintiffs also allege generally that all Defendants "engaged in a common plan to utilize NAFC's Certification, Mark and Logo to attract customers to Defendants' drug treatment facilities"; "were aware of the common plan and the common purpose: to receive acclaim in the industry and consequently profit and to attract new members to the Church of Scientology, based on the use of the NAFC Certifications, Mark and Logo"; and

---

[11]Defendants argue that *certification* marks do not exist at common law. Defendants state that one district court outside this Circuit has considered the issue and recognized a common law certification mark, but that it has not been recognized in this Circuit. The court is not convinced that certification marks should be treated differently than other marks. As Plaintiffs have sufficiently pleaded the claim, it will remain at this time. Defendants, of course, may re-urge this argument in a summary judgment motion.

"acted in concert, agreed and cooperated to achieve such misuse and each took affirmative steps to encourage the achievement of their plan." As the court stated at the March 26, 2015 hearing, these allegations are conclusory. The allegations certainly do not specify who did what to whom.

Significantly, Plaintiffs make no specific allegation that either of the Moving Defendants agreed with each other or with any other Defendant to infringe Plaintiffs' marks. As the Tenth Circuit stated in Twombly, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." Twombly, 550 U.S. at 556. Parallel conduct may be, and often is, perfectly innocent. Iqbal, 556 U.S. at 696 (noting that the difficulty with the parallel conduct alleged in Twombly was that it was "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market."). Accordingly, and for the reasons stated at the hearings on March 23, 24 and 26, 2015, Plaintiffs have failed to state a claim for civil conspiracy against the Moving Defendants.

**CONCLUSION**

The motions to dismiss [Docket Nos. 462 and 463] are GRANTED in part and DENIED in part as follows:

1. The NAFC Mark: Plaintiffs' 15 U.S.C. § 1114(1) trademark infringement claims are dismissed as to the Moving Defendants.

2. The Certification Marks: Plaintiffs' 15 U.S.C. § 1125(a)(1) and common law infringement claims remain only as specifically alleged against the Moving Defendants.[12] In all

---

[12] Plaintiffs specifically alleged claims for infringement of the C.C.D.C. mark against Jason Burdge and Robert Newman.

other respects, Plaintiffs' 15 U.S.C. § 1125(a)(1) and common law infringement claims are dismissed against the Moving Defendants.[13]

      3. Plaintiffs' right of publicity claim is dismissed.

      4. Plaintiffs' civil conspiracy claim is dismissed as to the Moving Defendants.

Dated this 5th day of August, 2015.

**Dated this 5th day of August, 2015.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

[13] For example, Plaintiffs have no claim against Mr. Burdge or Mr. Newman for infringement of any certification mark other than the C.C.D.C. mark. Also, Plaintiffs have not stated a claim against Mr. Burdge or Mr. Newman for contributory infringement as to any mark.